[Crim. No. 14528. In Bank. Apr. 22, 1971.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH CHARLES BISOGNI, Defendant and Appellant.

## COUNSEL

Charles V. Weedman for Defendant and Appellant.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, William E. James, Assistant Attorney General, and Howard J. Schwab, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**WRIGHT, C. J.**—Defendant was charged with armed robbery. At his first trial the jury was unable to reach a verdict and a mistrial was declared. At his second trial he was found guilty as charged (Pen. Code, § 211). He appeals from the judgment entered on the verdict. We conclude that the judgment must be reversed because of the admission of courtroom identifications of defendant's chief alibi witness and alleged coparticipant, which identifications were tainted by a highly suggestive showup.

About 11 p.m. on November 23, 1966, two men and a woman robbed Alfred's Restaurant in Long Beach. Four customers were seated at the bar, Mrs. Cahill, Mrs. Watson, Mr. Wombacher and his sister. The taller male robber approached the four patrons and ordered them at gunpoint to proceed to the kitchen. The shorter male robber demanded that the bartender follow the patrons into the back kitchen, and the female robber forced the manager, John West, into the same area. All of the victims were required to face the wall and later were ordered into a walk-in refrigerator which was then locked.

At the trial the prosecution introduced evidence that defendant was the shorter male robber, that one Borrell was the taller male robber, and that defendant's close friend, Mrs. Phyllis Gordon, was the female robber. Defendant introduced alibi evidence that he and Mrs. Gordon were elsewhere when the robbery was committed. Borrell, in a totally unrelated incident, had been killed before defendant was apprehended. Mrs. Gordon, although originally charged with the robbery, was not a codefendant at the second trial.

Defendant contends that the trial court erred in admitting into evidence statements made to Sergeant Jordan of the Los Angeles Police Department by Mrs. Gordon, who was called as a witness for the prosecution. These statements were admissible, however, under Evidence Code section 1235, and it is now settled that that section is constitutional. (*California* v. *Green* (1970) 399 U.S. 149 [26 L.Ed.2d 489, 90 S.Ct. 1930]; *People* v. *Green* (1971) 3 Cal.3d 981 [92 Cal.Rptr. 494, 479 P.2d 998].) There is, therefore, no merit in this contention.

Defendant further contends that the trial court erred in finding that a lineup at which he was identified was fair and in admitting in-court identification testimony allegedly tainted by the lineup. At the trial, three of the victims of the robbery, Edna Cahill, Clara Watson and John West, identified defendant as one of the perpetrators of the crime. They had, however, witnessed a lineup that defendant claims was unfair and unduly suggestive.

Shortly after the robbery, Mr. West was shown several hundred mug shots, but he was unable to identify any of the persons photographed as being any individual involved in the robbery. About five months later, around the end of April or the first of May 1967, he was shown six or eight additional photographs which included one of Borrell and one of defendant. He identified Borrell's picture as that of the taller male robber, but he failed to identify defendant. Mrs. Cahill was also shown the same set of six or eight pictures, but she was unable to identify anyone. Mrs. Watson was never shown any of the mug shots.

On Monday, May 8, 1967, a lineup was held following defendant's arrest on Friday, May 5, 1967. All three witnesses were told that they were to view and try to identify possible participants of the robbery. The lineup occurred before the United States Supreme Court decision in *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], and defendant was not entitled to the presence of counsel at the lineup (*People* v. *Feggans* (1967) 67 Cal.2d 444, 448 [62 Cal.Rptr. 419, 432 P.2d 21]; *Stovall* v. *Denno* (1967) 388 U.S. 293, 296-301 [18 L.Ed.2d 1199, 1203-1206, 87 S.Ct. 1967]). The controlling question is whether the lineup was so unnecessarily suggestive and conducive to a mistaken identification that admission of evidence of identifications based thereon resulted in a denial of due process. (*People* v. *Caruso* (1968) 68 Cal.2d 183, 187-189 [65 Cal.Rptr. 336, 436 P.2d 336]; *People* v. *Feggans, supra*, 67 Cal.2d at pp. 448-449; *Stovall* v. *Denno, supra*, 388 U.S. at pp. 301-302 [18 L.Ed.2d at pp. 1205-1206].) From a review of all of the evidence we conclude that the lineup in which defendant participated was fairly conducted and that he was not thereby denied due process of law.

Defendant also contends that the showup of Mrs. Gordon was unfair and unduly suggestive, that the witnesses' courtroom identifications were tainted by the police showup procedures and that he has standing to challenge such. We agree.

■ The reason for excluding identification evidence based on an unfairly conducted showup is that such evidence is unreliable as a matter of law and may result in the conviction of innocent persons. (*People* v. *Caruso, supra,* 68 Cal.2d at p. 188; *Stovall* v. *Denno, supra,* 388 U.S. at p. 302 [18 L.Ed.2d at p. 1206].) Obviously such evidence is equally unreliable when it is directed toward the identity of a coparticipant in a crime as when it relates to the identity of the defendant on trial. ■ Accordingly, whenever the identity of a confederate is essential to prove the defendant's participation in a crime and when, as here, such evidence effectively destroys the defense offered by the defendant, he has standing to challenge the fairness of the identification procedures of the alleged coparticipant.

The prosecution introduced evidence that defendant and Mrs. Gordon were two of the three robbers, that they jointly participated in the perpetration of the crime, and that they were closely associated with each other. Defendant's alibi that he and Mrs. Gordon were not at the scene at the time the crime was committed was shattered by proof that Mrs. Gordon was in fact one of the robbers. Under such circumstances, use of identification evidence of Mrs. Gordon which was tainted by an unfair showup would have the effect of denying defendant due process. We are of the opinion that the in-court identification evidence of Mrs. Gordon was so tainted and that there was no showing on the part of the prosecution by clear and convincing proof that such identifications were based upon observations which were independently made. (*People* v. *Caruso, supra,* 68 Cal.2d 183, 189-190.)

■ Following defendant's lineup, the three witnesses, Mrs. Cahill, Mrs. Watson, and Mr. West, were asked to look through a hole in a door or wall where they observed Mrs. Gordon alone in a room. Mrs. Watson first looked into the room and then related to Mrs. Cahill that the lady inside was the one who had been involved in the robbery. Mrs. Cahill, however, could not recognize her although Mr. West did. The witnesses previously had been told that they were being brought to the police station to try to identify suspects in the robbery. Immediately prior to observing Mrs. Gordon they had identified defendant as one of the robbers. They also knew that one of the three involved in the commission of the crime was a woman. Under these circumstances, the viewing of Mrs. Gordon alone in the room was highly suggestive that she was probably the female robber. Moreover, there was no emergency present requiring a single person

showup (cf. *Stovall* v. *Denno, supra,* 388 U.S. at pp. 301-302 [18 L.Ed.2d at pp. 1205-1206]), and as the showup occurred many months after the robbery, the identifications could not have been based on recent memories of the perpetrators of the crime. As in *In re Hill* (1969) 71 Cal.2d 997, 1005 [80 Cal.Rptr. 537, 458 P.2d 449], the procedure followed in effect suggested to the witnesses that Mrs. Gordon was one of the coparticipants.

■ It is settled that a single person showup is not necessarily unfair and must be assessed in the light of the totality of the circumstances. (*People* v. *Bauer* (1969) 1 Cal.3d 368, 374 [82 Cal.Rptr. 357, 461 P.2d 637]; *Stovall* v. *Denno, supra,* 388 U.S. at p. 302 [18 L.Ed.2d at p. 1206].) In this case that totality demonstrates unfairness.

A question remains whether the witnesses' in-court identifications of Mrs. Gordon were also tainted. ■ Observation of a suspect through an unfairly suggestive procedure does not always bar identification testimony at the trial. Such testimony is nevertheless admissible if the prosecution establishes "by clear and convincing evidence that the in-court identification [is] based upon observations of the suspect other than the lineup identification." (*United States* v. *Wade, supra,* 388 U.S. 218, 240 [18 L.Ed.2d 1149, 1164]; *In re Hill* (1969) 71 Cal.2d 997, 1006 [80 Cal. Rptr. 537, 458 P.2d 449].) ■ The record, however, discloses no "clear and convincing evidence" that the courtroom identification of Mrs. Gordon was based upon anything other than Mrs. Watson's and Mr. West's observations of her at the police station. At the time of the crime Mrs. Watson got only two short looks at the female participant, and Mr. West's observation of her was limited to a "glance." Both witnesses were required to stand facing the wall during the robbery, and when he saw Mrs. Gordon at the police station, Mr. West's reaction was only that "I seemed to think it was the woman."

The issue remains whether the error in admitting the identification evidence of Mrs. Gordon by Mr. West and Mrs. Watson was prejudicial. No point would be served by setting forth at length the mass of conflicting evidence that was before the jury. We note, however, that six victims of the robbery testified at the trial. Four of them identified defendant as one of the robbers, but two testified that he was not. His alibi defense was corroborated not only by a member of his family but also by disinterested witnesses. The jury at the first trial was unable to agree upon a verdict, and the trial court stated in ruling on the motion for a new trial that "I believe it was a close case." Finally, evidence that Mrs. Gordon was one of the robbers struck at the heart of defendant's alibi defense. Whether we apply the test of *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065], that the error must be shown harm-

less beyond a reasonable doubt or the test of *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], that it be reasonably probable that the error affected the result, the error in admitting the tainted identifications of Mrs. Gordon was clearly prejudicial.

We briefly consider an additional question which may arise on retrial. During the trial, two witnesses, Mr. West and Mr. Wombacher, identified a mug shot of Borrell as the taller male robber. ■ Purportedly to add weight to the witnesses' identification of defendant, the prosecution introduced over objection evidence of Borrell's violent death. Borrell had been killed by police officers over a month after the robbery when he drew a revolver after the police had stopped a car in which he was riding. Whether or not this evidence would have been admissible against Borrell had he been on trial, its relevance to defendant's participation in the robbery is entirely too attenuated to justify its admission against him. The prejudicial effect of associating defendant with a person who engaged in violent conduct on a totally unrelated occasion far outweighed its probative value to show that Borrell and, by inference, defendant, perpetrated the Long Beach robbery together. (See Evid. Code, § 352.)

The judgment is reversed.

Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

**McCOMB, J.**—I dissent. I would affirm the judgment for the reasons expressed by Mr. Presiding Justice Wood in the opinion prepared by him for the Court of Appeal, Second Appellate District, Division One (*People* v. *Bisogni,* Crim. 15766, filed January 27, 1970, certified for nonpublication).

Respondent's petition for a rehearing was denied May 19, 1971. McComb, J., was of the opinion that the petition should be granted.