[Crim. No. 28328. Second Dist., Div. Four. Mar. 30, 1977.]

In re ROBERT W., a Person Coming Under the Juvenile Court Law.
CLARENCE E. CABELL, as Acting Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
ROBERT W., Defendant and Appellant.

706

## COUNSEL

Nasim Naick Elliott, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and Ellen Birnbaum Kehr, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JEFFERSON (Bernard), J.**—In a petition filed in the juvenile court, on February 21, 1975, appellant Robert W., a minor, was charged in paragraph I with having committed a violation of Penal Code section 211 (robbery) on February 19, 1975; and in paragraph II with having committed a violation of Penal Code section 242 (battery) on the same date. The petition was subsequently amended to add a paragraph III that charged the minor with having committed a violation of Penal Code section 484 (theft) on the same date. The person named as victim in paragraphs I and II was Gerry Dumais. It was alleged in paragraph III that the value of the personal property taken, to wit, a jacket, was of a value not exceeding $200, thus making the alleged offense to be that of petty theft (Pen. Code, §§ 484 and 488).

Following an adjudication hearing, the court dismissed paragraph I of the petition on motion of the appellant made pursuant to Penal Code section 1118. The court found paragraphs II and III of the petition to be true and sustained the petition accordingly. The minor, Robert, was declared to be a ward of the juvenile court and, following a dispositional hearing, was committed to the California Youth Authority. Robert has appealed from this order of commitment.

Evidence offered to sustain the petition tended to establish that on the date in question Dumais was walking in the vicinity of Zelzah and Lassen Streets in the County of Los Angeles when appellant, Robert W., the minor, was travelling in a red GMC pickup truck. Dumais saw Robert give him "the finger." Thereafter the truck turned around and parked near where Dumais was walking.

Dumais testified that there were about seven or eight persons in the truck. They got out, ran towards him and encircled him. According to Dumais, appellant asked him why he had "flipped him off"; that Dumais answered that he had not "flipped him off." Dumais testified that appellant struck him twice with his fists—once in the nose and once in the mouth. Dumais denied that he had made any obscene gesture toward appellant or that he made any attempt to strike back at appellant, because he noticed that someone behind him had a stick in his hand.

Dumais also testified that he had his coat in his hand but thrown over his shoulder and, as he was trying to get away, the person holding the stick had a grip on Dumais' coat. Dumais ran to a house nearby, with his coat falling to the ground. When Dumais got to the house, he saw his coat on the ground and saw appellant pick up the coat and run with it to the truck. All the persons who had encircled Dumais ran back to the truck and it drove away. Dumais wrote down the license number of the truck, telephoned the police and gave the police the information about the incident, including the license number of the truck.

A police officer heard a broadcast about the alleged incident, which described the truck and gave a license number. Within 15 to 20 minutes, the officer saw a truck matching the description. He stopped the truck and placed appellant and the other occupants under arrest.

Appellant urges six grounds of error as warranting a reversal of the order committing him to the Youth Authority.

## I

One contention of appellant is that he was denied due process of law by virtue of evidence of an unduly suggestive lineup followed by an in-court identification tainted by the illegal lineup procedure.

The evidence established that appellant and the other occupants of the truck were all transported to the police station and put in a room. The alleged victim, Dumais, came to the police station and observed these persons in the room. This observation took place within approximately 30 minutes of the time of the incident. Appellant was wearing the coat which had been dropped by Dumais. An officer testified that appellant was wearing the coat when the truck was stopped by him and appellant and the other occupants were placed under arrest.

Appellant argues that this lineup or showup was unduly suggestive because appellant was made to wear the coat—which was obviously too large for him—and none of the other persons in the showup room had on any similar coats. According to appellant, this situation clearly suggested to Dumais that he should identify appellant as the attacker and as the person who picked up appellant's coat from the ground.

At the adjudication hearing, appellant presented evidence from some of the occupants of the truck to the effect that a person other than appellant picked up Dumais' coat and took it to the truck. The trial court rejected as hearsay proposed testimony from appellant and several occupants of the truck arrested with appellant that appellant was ordered by a police officer to wear Dumais' coat in the room at the police station where Dumais was brought to identify his attackers.

■ The rule of law is well settled that when a defendant, or a minor proceeded against in juvenile court, establishes that an identification has been unnecessarily suggestive, the prosecution must show by clear and convincing evidence that the in-court identification was based upon observations of the accused at the scene of the crime to preclude a violation of the accused's constitutional due process rights. (*Stovall* v. *Denno* (1967) 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967]; *People* v. *Caruso* (1968) 68 Cal.2d 183 [65 Cal.Rptr. 336, 436 P.2d 336]; *People* v. *Bisogni* (1971) 4 Cal.3d 582 [94 Cal.Rptr. 164, 483 P.2d 780]; *In re Carl T.* (1969) 1 Cal.App.3d 344 [81 Cal.Rptr. 655].)

The case at bench, however, does not represent the typical lineup, whether impermissibly suggestive or not, but a showup of suspects coming shortly after the alleged crimes were committed. ■ Even though an early confrontation between an alleged victim and an alleged perpetrator is held to be in the interest of obtaining an affirmative identification as promptly as possible (*People* v. *Floyd* (1970) 1 Cal.3d 694, 714 [83 Cal.Rptr. 608, 464 P.2d 64]), a showup confrontation may be so suggestive as to deprive an accused of due process of law. (See *People* v. *Caruso, supra,* 68 Cal.2d 183; *People* v. *Anthony* (1970) 7 Cal.App.3d 751, 764 [86 Cal.Rptr. 767].)

The Attorney General asserts that the showup identification of appellant in the case at bench is similar to the in-the-field identification process where it has been held that "[t]he potential unfairness in such suggestiveness, however, is offset by the likelihood that a prompt identification within a short time after the commission of the crime will

be more accurate than a belated identification days or weeks later." (*People* v. *Anthony, supra,* 7 Cal.App.3d 751, 764-765.) The major claim of unnecessary suggestiveness made in the case at bench is appellant's claim that he was forced to wear Dumais' coat during the showup identification procedure—a coat which was obviously too large for appellant and, therefore, did not fit him. But in *People* v. *Floyd, supra,* 1 Cal.3d 694, 713, it was stated that there is "no authority for the proposition that it is a denial of due process to require a suspect to wear the clothes in which he was arrested." But the *Floyd* court also stated: "We recognize, of course, that a suspect might be dressed in such a striking outfit that to place him in a lineup with others not similarly garbed would be as unfairly suggestive as to place one Oriental in a lineup of all Caucasians." (*Floyd, supra,* 1 Cal.3d 694, at p. 713.)

But in the case at bench there was disputed testimony with respect to whether appellant was wearing the coat when he was arrested.

■ This dispute brings into sharp focus the question of whether the trial court erred in its rulings that the proffered testimony of several persons at the showup that a police officer instructed or ordered appellant to put on the coat for the showup constituted inadmissible hearsay. The trial court's rulings were clearly erroneous. Evidence of a declarant's statement constituting words of instruction, command or order is *not* hearsay evidence because such a statement is *not* being offered to prove the truth of any facts stated in the statement. Such a statement is relevant, if at all, merely because the words were spoken, as an issue or part of an issue in the case. (*People* v. *Patton* (1976) 63 Cal.App.3d 211 [133 Cal.Rptr. 533]; *People* v. *Montgomery* (1976) 61 Cal.App.3d 718 [132 Cal.Rptr. 558]; see Jefferson, Cal. Evidence Benchbook (1972) § 1.3, pp. 5-10, § 1.7, pp. 27-29.) Had the trial court ruled correctly and admitted the testimony, the question of whether appellant was wearing Dumais' coat when he was arrested may well have been answered in the negative and rendered the principles set forth in *Floyd* and *Anthony* inapplicable. If so, a police officer's compelling appellant to put on a coat that did not fit him for purposes of the identification showup would indeed have been necessarily unduly suggestive.

■ But even though an accused claims that the pretrial identification was so unnecessarily suggestive as to deprive him of due process of law, it has been held that, in addition, "he must show that it gave rise to a *very substantial* likelihood of irreparable misidentification. (*Simmons* v.

*United States,* 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967, 971].)" *(Anthony, supra,* 7 Cal.App.3d 751, at p. 765.) (Italics added.) Such a showing is not made in the instant case. The testimony of all the witnesses present at the incident on the street established that the altercation was between appellant and Dumais. In light of this undisputed fact, it seems clear that Dumais' in-court identification of appellant had, as its independent source, the identification of appellant by Dumais when the altercation occurred, and not as a result of the showup identification. In spite of the trial court's erroneous rulings excluding nonhearsay testimony relevant on the issue of the fairness or unfairness of the showup identification procedures, Dumais' in-court testimony that he saw appellant pick up Dumais' jacket from the ground could not reasonably be said to have been influenced by the showup identification procedure, irrespective of any unfairness involved. This conclusion follows since Dumais had identified appellant as the person who struck him twice, and all the witnesses agreed that the fight was between Dumais and appellant even though there was disagreement with respect to whether appellant was the one who picked up the coat from the ground and with respect to the circumstances under which appellant was in possession of Dumais' coat at the time of appellant's arrest.

## II

Appellant makes the contention that the deputy district attorney's ex parte communication to the adjudication hearing referee constituted irreparable prejudice to appellant. During the hearing, the referee indicated that the deputy district attorney had advised the referee that a witness in a companion case had told him that the companion minor, Frederick B., had attempted to run over the witness' children. This information was brought to the referee's attention without appellant or appellant's attorney being present. The court then admonished all witnesses and the two minors, Frederick B. and appellant not to harass or threaten any witnesses. Although Frederick B. was not under detention, appellant was being detained in juvenile hall during the adjudication hearing.

Although the admonition to appellant appeared to be uncalled for under the circumstances, and the ex parte communication made by the deputy district attorney to the court is not to be condoned, there is no showing by appellant that the referee became prejudiced against appellant by reason of hearsay communications not emanating from appellant or any member of appellant's family. It is obvious that, with

appellant being detained in juvenile hall, the referee could not have made any inference that appellant, as distinguished from the companion minor, had been attempting to influence witnesses in any way. Appellant's claim of irreparable prejudice to appellant resulting from the action of the deputy district attorney is completely without substance.

### III

■ Appellant contends that the juvenile court erred in denying an affidavit of prejudice, filed by appellant's mother against the referee who conducted the adjudicatory hearing. The affidavit was filed pursuant to the provisions of Code of Civil Procedure section 170.6. Although appellant's argument is addressed primarily to the question of timeliness of the affidavit and the standing of a minor's parent to challenge a juvenile court judge or referee under section 170.6, the crucial issue is whether section 170.6 applied at all to juvenile court referees as contrasted with court commissioners. On the date of appellant's case, below, Code of Civil Procedure section 170.6, subdivision (1), precluded a "judge or court commissioner" from hearing a case in the event of a filing of an affidavit of prejudice pursuant to the provisions of the section. Section 170.6 did not mention a "referee" as being in the category of judicial officers subject to a prejudice challenge.

In *In re Edgar M.* (1975) 14 Cal.3d 727 [122 Cal.Rptr. 574, 537 P.2d 406], the court rejected a minor's claim that a juvenile court referee was subject to disqualification under Code of Civil Procedure section 170.6 because the section did not specifically include a "referee" within its provisions. The holding of *In re Edgar M.* is thus fatal to appellant's claim of error in the case at bench.

Appellant seeks to avoid the application of *In re Edgar M.* by asserting that it was dicta. This claim appears to be based on the fact that the rejection of the minor's claim regarding the affidavit of prejudice was made in two footnotes. (See *In re Edgar M., supra,* 14 Cal.3d 727, at pp. 732-733, fns. 5 and 6.) We know of no rule that indicates that a court's view of the law should be considered dicta and not followed because it is set forth in a footnote of an opinion. It is to be noted that, effective January 1, 1977, section 170.6 of the Code of Civil Procedure was amended to include a "referee" as subject to disqualification along with judges and commissioners. (See Stats. 1976, ch. 1071, § 1, p. 4517.)

## IV

Appellant contends that his mother was denied the right of separate counsel in violation of appellant's due process rights as well as his parent's due process rights. The record indicates that prior to the adjudication hearing the court informed appellant's mother that an attorney had been appointed to represent appellant, her son, but that, in addition, she was entitled to have an attorney represent her if she so desired. The mother was then asked if she desired to represent herself and she answered in the affirmative.

At the dispositional hearing, the mother requested first that the attorney then representing appellant be dismissed and the public defender be appointed. It appears that private counsel had been appointed for appellant because the public defender's office had declared a conflict as to this case. Appellant's mother again requested that the public defender's office be substituted for appellant's attorney. This request was denied. The mother then requested a two-day continuance to hire private counsel. The referee refused the request for the two-day continuance and completed the dispositional hearing.

Appellant argues that a parent has a statutory right to the assistance of counsel apart from the right of a minor to be represented by counsel and that it was a denial of appellant's due process rights as well as a denial of his parent's due process rights for the referee to refuse to grant his parent's request for a two-day continuance in order to secure counsel. Appellant relies principally upon Welfare and Institutions Code sections 633 and 634 and the case of *In re Dunlap* (1976) 62 Cal.App.3d 428 [133 Cal.Rptr. 310]. Section 633 provides that at the detention hearing the minor *and* his parent shall be informed of "the right of such minor *and* his parent or guardian to be represented *at every stage of the proceedings* by counsel." (Italics added.) Section 634 provides, in pertinent part, that "[w]hen it appears to the court that the minor or his parent or guardian desires counsel but is unable to afford and cannot for that reason employ counsel, the court *may* appoint counsel. In a case in which the minor is alleged to be a person described in Section 601 or 602, the court *shall* appoint counsel *for the minor* if he appears at the hearing without counsel, whether he is unable to afford counsel or not, unless there is an intelligent waiver of the right of counsel by the minor; . . . In any case in which it appears to the court that there is such a conflict of interest between a parent or guardian and child that one attorney could not properly represent both, the court *shall* appoint counsel, in addition to

counsel already employed by a parent or guardian or appointed by the court to represent the minor or parent or guardian. . . ." (Italics added.)

■ It seems clear that the language of section 633 of the Welfare and Institutions Code—which is mandatory in nature—gives a parent of a minor an absolute right to be represented by counsel at every stage of the juvenile court proceedings. Under section 633, the parent's right to counsel is not affected by the fact that the minor is represented by counsel. Each is entitled to be so represented.

Section 634 gives the court discretionary authority to appoint counsel for the minor *or* the parent in case of indigency except that it is mandatory that counsel be appointed for a minor alleged to come within Welfare and Institutions Code section 601 or 602. A distinction is thus made in section 634 between a minor and his parent insofar as the right to a court-appointed attorney is concerned. The minor has an absolute right to a *court-appointed attorney* while a parent does not possess such right.

■ By applying sections 633 and 634 of the Welfare and Institutions Code to the case at bench, it readily appears that appellant's mother could assert a right to counsel for herself at the dispositional hearing. The mother did not ask the referee to appoint, at public expense, an attorney for her which would require the court only to exercise a *discretionary* authority under section 634 of the Welfare and Institutions Code. Nor did the conflict-of-interest provisions of section 634 have application here. The interests of appellant and his parent were the same—to seek to secure a disposition other than a Youth Authority commitment.

Appellant argues that the parent's right to counsel as set forth in Welfare and Institutions Code sections 633 and 634 is analogous to the child's right to counsel in a free-from-parental-control proceeding dealt with in the *Dunlap* case. The *Dunlap* court made an interpretation of Civil Code section 237.5 which vests the court with discretion to appoint counsel to represent the child in a free-from-parental-control proceeding. *Dunlap* reversed the trial court's order for failure of the trial court to appoint counsel for the child who was the subject of the proceeding.

But *Dunlap* is neither controlling nor persuasive with respect to the instant case. In *Dunlap,* the child involved appealed from the trial court's order and asserted that her rights, as an *aggrieved party* to the trial court

proceeding, had been violated. In the case at bench, there is no appeal by appellant's parent. Appellant is seeking to assert on appeal a right belonging to his parent. Appellant's contention that he has a due process right for his parent to be represented by separate counsel is made without citation to any authority so holding. We are unable to see any logic in appellant's contention.

In our view, a parent in a juvenile court proceeding is a party to such proceeding with a substantial interest—the interest of protecting the parent-child relationship and the parent's right to custody. The right of a parent to separate counsel representation, recognized by Welfare and Institutions Code sections 633 and 634, indicates legislative recognition of a parent's interest as a party to the juvenile court proceeding. ▆ Since a juvenile court's order may take custody of a minor away from a parent, a parent comes within the provisions of Code of Civil Procedure section 902, which authorizes a "party aggrieved" to take an appeal. In *In re Rauch* (1951) 103 Cal.App.2d 690 [230 P.2d 115], it was held that a father, though previously divested of custody of his child by a guardianship order, still had a fundamental interest which entitled him to appeal from an order declaring the child a ward of the juvenile court. If there was an abuse of discretion by the juvenile court referee in denying appellant's mother's motion for a short continuance of the dispositional hearing to enable her to secure an attorney for herself, the claimed error is one that cannot be asserted by appellant on his parent's behalf.

## V

Appellant makes the contention that the trial court erroneously interpreted the law of self-defense and deprived appellant of a crucial defense to the battery charge. Appellant makes this contention on the theory that the referee, without regard to the evidence, ruled as a matter of law that the defense of self-defense could not be asserted by appellant because he had sought a quarrel with Dumais, the alleged victim. We do not so interpret the record in this case. Appellant takes out of context a remark made by the referee. ▆ Our review of the record shows that the referee was explaining that Dumais, observing that he was about to be attacked by appellant, had no duty to retreat in order to preclude appellant from delivering the two blows to Dumais which constituted the battery. This is a correct interpretation of the law of self-defense. (*People v. Garcia* (1969) 275 Cal.App.2d 517, 522 [79 Cal.Rptr. 833]; *Roads* v. *Superior Court* (1969) 275 Cal.App.2d 593, 601 [80 Cal.Rptr. 169].)

The record indicates that there was substantial evidence tending to support the referee's finding that appellant committed the battery charged and that appellant did not strike Dumais in self-defense. On appeal, we are required to view the evidence in the light most favorable to the lower court's findings. (*In re William F.* (1974) 11 Cal.3d 249, 252-253 [113 Cal.Rptr. 170, 520 P.2d 986]; *In re Roderick P.* (1972) 7 Cal.3d 801, 808-809 [103 Cal.Rptr. 425, 500 P.2d 1].)

## VI

Finally, appellant contends that the order of commitment to the Youth Authority is fatally defective for being couched in conclusionary terms and for a lack of express findings to support such order. Appellant also attacks the order on the ground that it is not supported by a showing that a Youth Authority commitment was a matter of last resort, in light of the misdemeanor offenses which formed the basis of the petition being sustained.

The findings of the juvenile court which supported the order of commitment to the California Youth Authority were in the following language: "THE COURT FINDS: [¶] Welfare of minor requires that custody be taken from parents or guardians. . . . [¶] The Court finds that the mental and physical condition and qualifications of the ward are such as to render it probable that he will be benefitted by the reformatory educational discipline or other treatment provided by the Youth Authority." Although not a part of the formal findings and order of commitment, the trial court stated orally at the dispositional hearing that it was making findings of fact and, among the findings recited was the following: "The welfare of the minor and the safety and protection of the public cannot be adequately safeguarded without the removal of the minor from the custody of his parents." The court also at the dispositional hearing orally announced that it was making conclusions of law. A conclusion of law orally recited was the following: "[T]hat the removal of the minor from the minor's parents is required to adequately safeguard the welfare of the minor and the safety and protection of the public."

The court's formal findings are in the language of Welfare and Institutions Code, section 726, subdivision (c), and section 734. Appellant points out that *In re Lawrence B.* (1976) 61 Cal.App.3d 671 [132 Cal.Rptr. 599] held that an order of commitment to the California Youth Authority which is supported only by findings in the language of Welfare and Institutions Code section 726 is invalid because such findings are too

conclusionary in nature. For his "last resort" argument, appellant relies upon *In re Aline D.* (1975) 14 Cal.3d 557, 564 [121 Cal.Rptr. 816, 536 P.2d 65], in which the court said: "As is evident from the applicable statutes, 'Commitments to the California Youth Authority are made only in the most serious cases and only after all else has failed.' [Citation.]"

The Attorney General counters appellant's reliance on *In re Lawrence B.* by pointing out that the *In re Lawrence B.* holding is in conflict with the holding of another Court of Appeal decision—the case of *In re Willy L.* (1976) 56 Cal.App.3d 256 [128 Cal.Rptr. 592]. The *Willy L.* case sustained an order of commitment to the Youth Authority in which the court's order stated: " 'The Court makes its findings pursuant to the provisions of Section 727c [*sic*] Juvenile Court Law.' " (*In re Willy L., supra,* 56 Cal.App.3d 256, at p. 266.) The only element additional to the formal order was the verbal statement of the juvenile court judge: " 'Pursuant to Section 726 of the Welfare and Institution[s] Code the minor is ordered—is removed from the custody of his parents.' " (*In re Willy L., supra,* 56 Cal.App.3d 256, at p. 266.)

Thus, the *Willy L.* case sustained a Youth Authority commitment in which the *only finding* was in the language of Welfare and Institutions Code, section 726, subdivision (c), as set forth above. The *Willy L.* court emphasized that the requisite finding may be obtained from the reporter's transcript in lieu of an entry in the minute order, but held that the formal finding set forth in the minute order was sufficient to sustain the Youth Authority commitment.

The *Willy L.* court also approved of the fact that the juvenile court judge had placed reliance upon the probation officer's dispositional social study—a part of the record—in which it was stated: " 'It is further recommended pursuant to Section 726c of the Welfare and Institutions Code that it be found to be in the best interest, welfare, and protection of Willy [L.] that he be removed from the custody of his parents. . . .' " (*In re Willy L., supra,* 56 Cal.App.3d 256, at p. 266.)

In the case at bench, as in *Willy L.,* the probation officer's report recommended appellant's commitment to the Youth Authority. The probation officer's report states, in pertinent part, as follows: "The minor's police, probation, and court history is extremely lengthy, and almost staggering to behold. He has 22 arrests . . . . Of these arrests, six involve crimes of violence against persons, including a sustained petition of 288 Penal Code (child molesting). Additionally, five of his prior arrests

involve multiple charges or counts. The minor has been on 654 voluntary probation, court probation, intensive aftercare probation, has been in a probation camp, foster homes, placed with a relative, has been committed to the Camarillo State Hospital, Metropolitan State Hospital, Olive View Hospital, and has been in the California Youth Authority on two occasions. He was last sent to California Youth Authority late last year for a 90 day observation period wherein the staff recommended long term institutionalization and placement at the California Youth Authority. . . . [¶] To state that previous probation programs have been exhausted in respect to the minor's rehabilitation would be an understatement. The minor's history of assaultive behavior, including the present matter that is now before the court, clearly indicates he is not only a serious threat to the community, but is a danger to himself. [¶] This officer is quite familiar with the alternatives to California Youth Authority, but clearly believes if any other program could be found it is extremely doubtful it would be of any benefit to the minor, or to the community. The court should also be informed the minor has a history of runaway, including two escapes from juvenile hall, one from Camarillo State Hospital, and one from Metropolitan State Hospital. More recently, the minor attempted to runaway [sic] from the Scudder Detention Facility on May 1, 1975, but was apprehended and removed to Central Juvenile Hall for added security."

Certainly there is language in *In re Aline D.* that speaks of a Youth Authority commitment as the "last resort" to alternative placements. But *Aline D.* does not dictate that there must be such a showing to support an order of commitment to the Youth Authority. The actual holding of *Aline D.* is simply that "[t]he unavailability of suitable alternatives, *standing alone,* does not justify the commitment of a nondelinquent or marginally delinquent child to an institution primarily designed for the incarceration and discipline of serious offenders." (*In re Aline D., supra,* 14 Cal.3d 557, at p. 567.) (Italics added.)

In the case at bench, it is not necessary for us to decide whether *In re Lawrence B.* should be followed rather than *In re Willy L.,* or that the reverse should be true. Even if we were to take the view that Youth Authority commitment in the case at bench should be considered error because of the lack of findings more detailed than in the language of Welfare and Institutions Code sections 726 and 734, such an error does *not* automatically constitute prejudicial error to require a reversal. Application of the principle announced recently by the California Supreme Court in *People* v. *Chi Ko Wong* (1976) 18 Cal.3d 698 [135

Cal.Rptr. 392, 557 P.2d 976] dictates that if there is error in the case at bench, it should be considered nonprejudicial and nonreversible error.

The *Chi Ko Wong* case dealt, in part, with the question of the sufficiency of a "statement of reasons" to support a juvenile court's finding of unfitness and an order certifying a minor to the adult court for criminal prosecution. The *Chi Ko Wong* court held that "[w]hile it is *unnecessary that this statement* [statement of reasons] *be formal or that it include conventional findings of fact* [citations], we believe the mere recitation of the ultimate fact, that the court finds the minor not amenable to treatment through juvenile court facilities, is insufficient to satisfy the requirement that the finding be supported by a statement of *reasons." (Chi Ko Wong, supra,* 18 Cal.3d 698, at p. 722.) (Italics added except for the word "reasons" which is in the original.)

But *Chi Ko Wong* also held that even though the error of the juvenile court in failing to support its finding of the minor's unfitness by a satisfactory statement of reasons was an error of *constitutional dimensions,* the error did *not* require a reversal under the circumstances presented. "Thus, although the failure to make a statement of reasons for denying juvenile court retention was an error of constitutional dimensions, we conclude that in light of the overwhelming evidence supporting the probation officer's recommendation and the finding of the juvenile court referee, the failure to make such a statement was harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].)" (*Chi Ko Wong, supra,* 18 Cal.3d 698, at pp. 722-723.)

In the case at bench, even if it be deemed error for the juvenile court to have failed to support its order of commitment to the Youth Authority by making findings more detailed than in the language of Welfare and Institutions Code sections 726 and 734, the error is *simply* one of statutory interpretation or a violation of a court-made rule of law and is *not* of constitutional dimensions.

If the record in *Chi Ko Wong* was such that a failure to make the necessary statement of reasons to support a finding of unfitness constituted an error *harmless* beyond a reasonable doubt under the *Chapman* standard, a fortiori, the record in the case at bench as revealed by the probation officer's report, is such that the failure of the juvenile court to make the necessary findings to support a Youth Authority commitment constituted *harmless* error because it is *not* reasonably probable that a

result more favorable to the minor would have been reached in the absence of such error under the *Watson* standard. (See *People* v. *Duran* (1976) 16 Cal.3d 282 [127 Cal.Rptr. 618, 545 P.2d 1322]; *People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243].)

The order from which the appeal has been taken is affirmed.

Files, P. J., and Dunn, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 26, 1977.