[Crim. No. 39723. Second Dist., Div. Four. Mar. 5, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
DUANE ANTHONY NASH, Defendant and Appellant.

COUNSEL

Russell Iungerich, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney Gener-

al, John R. Gorey and Robert S. Henry, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WOODS, Acting P. J.**—Defendant was convicted of one count of kidnaping, three counts of rape, two counts of sodomy, and one count of forcible oral copulation. He appeals from the judgment of conviction, contending that the in-court identification of him by the victim, Cynthia B., should have been ruled inadmissible, as based on an unreasonable one-person showup; and that he was improperly sentenced. We reject both of these contentions and affirm the judgment.

Appellant was originally charged with 22 counts of kidnaping and sex offenses against four named victims. Five counts were dismissed prior to trial, and he was found not guilty of the offenses charged against two victims. He was convicted of having kidnaped and raped De Anna H. and having raped, sodomized and forcibly copulated Cynthia B. His contentions on appeal relate only to the Cynthia B. offense, and the relevant facts will be discussed in connection with the issues raised.

I

Miss B. testified that, on March 13, 1980, at approximately 9 p.m., she met appellant on the street, who began talking to her. He told her he had been stopped by the police for driving under the influence of alcohol and that he needed someone to drive him to a nearby location in his car. Although it was nighttime, the street lights were on and she had no trouble seeing appellant. The victim had seen appellant around the neighborhood on one or two occasions prior to this event. She agreed to help him and accompanied him to a nearby garage. Once inside the garage, appellant pushed her down, struck her repeatedly with his hands and fists, and committed the charged offenses. The victim testified that she and appellant were in the garage for approximately two hours.

Eventually, the victim and appellant noticed some lights coming down the alley. The victim began to scream; appellant jumped up and ran out the garage door. She ran screaming through the front door of the garage, naked, partially gagged and with her hands tied behind her

back. A police car was in the alley and she told the officers what had happened. The officers provided her with a coat, put her in the car, and immediately began driving around the area looking for her assailant. Several times the officers stopped to question suspects, but whenever a suspect was brought over to the car for the victim to look at, she informed the police that that was not the man. She rode with the police for approximately 20 minutes, whereupon they retrieved her clothes from the garage and took her to the hospital.

At approximately 6 p.m. the next evening, officers came to the victim's home and told her they had a "possible suspect" for her to look at. She went with them to a location approximately two blocks from her home. There she saw someone sitting in a police car; before the officers could take him completely out of the car, she immediately recognized him and said, "That's him."

Officer Cochran testified that, on March 14, at approximately 6 p.m., he saw appellant standing on the sidewalk. He approached appellant, told him there had been a rape the night before in the area, and that he fit the description of the assailant. Appellant was seated in the back of Officer Cochran's police vehicle while other officers went to get Miss B.

Officer Knecht testified that she went to Miss B.'s home, told her that a patrol unit had stopped a possible suspect, and that they would like her to accompany them "to determine if she could identify that person or eliminate him." On the way to the location, Officer Knecht told her that the person she would see was only being detained awaiting their arrival, and that she was not to infer that because he was in custody he was a suspect, nor let that influence any identification, that it was just as important to clear an innocent person. Miss B. indicated that she understood.

Lieutenant Cunningham, who accompanied Officer Knecht, repeated the same admonition to the victim. Both officers testified that the victim immediately identified appellant as he was getting out of the police car.

■ Appellant contends that Miss B.'s identification of him at trial was tainted by an unreasonably suggestive one-person showup and thus should have been excluded. It is appellant's position that a single-person showup is per se violative of due process when the police have no com-

pelling reason for using this mode of pretrial identification.[1] Although the length of time between the occurrence of a crime and the confrontation between the suspect and the victim is important in determining whether the identification procedure was fair, it is only one of many factors which the court must weigh and analyze in making that determination.

■ As we explained in *People* v. *Hall* (1979) 95 Cal.App.3d 299, 309 [157 Cal.Rptr. 107]: "... 'It is settled that a single person show up is not necessarily unfair and must be assessed in the light of the totality of the circumstances.' (*People* v. *Bisogni* (1971) 4 Cal.3d 582, 587 [94 Cal.Rptr. 164, 483 P.2d 780].) The United States Supreme Court and California courts have recognized a number of factors which should be taken into consideration in determining whether a single-person show-up was justified under the circumstances. 'In *Neil* v. *Biggers, supra*, 409 U.S. [188] at page 199 [34 L.Ed.2d 401 at p. 411, 93 S.Ct. 375] ..., the Supreme Court of the United States set forth a series of factors to be considered in determining whether a confrontation procedure was so suggestive as to lead to the likelihood of misidentification. These factors are: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."' (*People* v. *Gomez* (1976) 63 Cal.App.3d 328, 337 [133 Cal.Rptr. 731].)"

Appellant is correct in his observation that ordinarily very little time, one to two hours, has passed when an on-the-scene confrontation is orchestrated by the police. And the justification for that onsite confrontation, as opposed to a formal lineup procedure, is generally the need to exclude from consideration innocent persons so that the police may continue to search for the defendant while it is reasonably likely that he is still in the immediate area. Obviously, that justification strained when

---

[1]Respondent's answer to this contention is that there was no showup. Respondent argues that since it was established that the victim had seen appellant prior to the night of the crime, this was a case of "one person who knew another person yet did not know his name or address and thus how to locate him. Therefore, here the police were attempting to locate a person, not to identify a perpetrator of an offense." We disagree. The victim was brought to appellant for the purpose of identifying him as the perpetrator of the offense or excluding him from consideration. As we will discuss, the fact that she had seen appellant on prior occasions adds to the likelihood that her identification of him was accurate, but it does not transform the single-person showup into something else.

applied to the facts of this case where the showup was held 20 hours later. Officer Knecht was asked why a lineup was not conducted instead of the potentially suggestive showup. The officer answered that it was important to know immediately if appellant was the man they were looking for, because they had officers on a stakeout. The officers were anxious to conclude the stakeout as soon as possible, because there were an insufficient number of available officers.

 We need not determine whether those facts constitute an emergency or exigency which would justify an in-the-field identification, rather than a lineup. Although the cases have discussed whether or not such an emergency existed, no case has held that a single-person showup in the absence of compelling circumstances is per se unconstitutional. Any identification procedure is improper if it gives rise to impermissible suggestion, likely to result in misidentification. (*Simmons v. United States* (1968) 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967].) The court must look at the totality of the circumstances to determine whether the procedure used was unfair.

Few cases have discussed the time factor which is at issue here. In *People* v. *Bisogni* (1971) 4 Cal.3d 582, 586-587 [94 Cal.Rptr. 164, 483 P.2d 780], the Supreme Court found unfair a single-person showup conducted many months after a robbery. The court noted that under those circumstances, "the identifications could not have been based on recent memories of the perpetrators of the crime." (*Id.*, at p. 587.)

Obviously, we are not dealing here with an identification which occurred months, weeks, or even days after the event, nor with a time frame which would create a likelihood of failed memory.

The victim had seen appellant on one or two occasions before the crime was committed, and had spent approximately two hours in close proximity to him during the commission of the crime. Fewer than 24 hours later, she observed him and immediately recognized and identified him. Of significance in this case, additionally, is that the victim was shown but did not identify many men before she saw appellant. In those instances, suspects were stopped on the street and brought to the police vehicle for her observation. Her refusal to identify any of them makes it extremely unlikely that she was unduly influenced by the fact that appellant was in police custody, or that the police suspected that he was the perpetrator. The facts of this case do not give rise to a likelihood of misidentification. Under all of the circumstances of this case,

the single-person showup was not violative of due process and thus the testimony of the victim was properly admitted at trial.

## II

■ Appellant's next contention relates to his sentence. The trial court ordered appellant to serve a term of imprisonment of 14 years. He challenges the sentence imposed on count XV, rape of Miss B., a term of three years. That count did not serve as the principal term, and it is appellant's position that, under Penal Code section 1170.1, the court could impose a sentence for that subordinate term of no more than one-third of the middle term of imprisonment prescribed therefor.

This contention is without merit, because in Penal Code section 667.6, the Legislature has created an exception for the crime of rape. That section, at subdivision (c), provides in pertinent part: "In lieu of the term provided in section 1170.1, a full, separate, and consecutive term may be imposed for each violation of subdivision (2) or (3) of section 261, ... whether or not the crimes were committed during a single transaction...." Under that section, a three-year term of imprisonment for this subordinate offense is permissible.

The judgment is affirmed.

Kingsley, J., and McClosky, J., concurred.

A petition for a rehearing was denied March 23, 1982, and appellant's petition for a hearing by the Supreme Court was denied April 28, 1982.