598 S.E.2d 297

**The STATE, Respondent,**

v.

**Robert Earl MILLER, Appellant.**

**No. 3784.**

Court of Appeals of South Carolina.

Heard March 10, 2004.

Decided April 26, 2004.

Withdrawn, Substituted, and Refiled June 28, 2004.

Rehearing Denied June 28, 2004.

William G. Rhoden, of Gaffney, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Charles H. Richardson, all of Columbia; and Solicitor Harold W. Gowdy, III, of Spartanburg, for Respondent.

HUFF, J.:

A Cherokee County grand jury indicted Robert Earl Miller for unlawful possession of a handgun, failure to stop for a police vehicle, and armed robbery. Following a jury trial, Appellant was convicted of all three charges. During trial, Appellant asked for and was denied a suppression hearing

concerning the show-up identification of his alleged co-partici-pant. We remand for an *in camera* hearing.

## FACTUAL/PROCEDURAL BACKGROUND

On or about 4:00 p.m. on the afternoon of October 5, 2001, a black male robbed the Alltel Communications store located on Floyd Baker Boulevard in Gaffney, South Carolina. The perpetrator entered the store with his back to the store's two female employees. As the man turned to face the employees, he pulled a black mask over his face, brandished a black handgun, and ordered the employees to fill a bag with money.

The two employees began filling the bag with money from one of the store's cash registers, when the man ordered one of the women to open the second cash register. However, the employees could not find the keys to the second register. While in the back looking for the keys, the man forced one of the women to open the store's safe. After finding the safe empty, the man told one of the women to keep looking for the keys to the register. Realizing they would not be able to open the second register, the man took both women into the back of the store and made them lie down on the floor. The employ-ees lay on the floor as instructed until they heard the front door buzzer. Assuming the robber had left the store, the employees went to the front of the store, locked the door, and called 911.

The robbery lasted approximately ten minutes and resulted in a little over four hundred dollars being stolen. When police arrived on the scene, the employees described the robber as a black male who wore a blue shirt and dark pants. Sometime later, an individual was brought back to the store, and both women positively identified this person as the robber. One of the women testified, although the man never removed the mask during the robbery, they were able to see the side of his face as he pulled the mask down. Both women testified they never saw a car in the parking lot, but they heard a car door and assumed it was a customer coming in when the robber entered the store.

On October 5, 2001, shortly after starting his 4:00 shift, Trooper Johnnie Godfrey with the South Carolina Highway Patrol was traveling on Floyd Baker Boulevard near the Alltel

store when a vehicle came from his right and cut him off. At this point, Trooper Godfrey testified that he turned on his blue lights and attempted to pull over the car for the purpose of issuing a warning for improper lane change and failing to yield the right-of-way. The car pulled into a parking lot, but failed to stop, instead exiting on another street and heading up the interstate toward Blacksburg. A pursuit ensued involving several officers, including the Highway Patrol and the Blacksburg City Police Department.

The pursued car left Gaffney and headed up I–85 toward North Carolina, sideswiping a car and turning off the interstate. A bystander testified that she observed the chase and as the car approached her, she saw someone toss a gun from the passenger side window. Officer Christy Poole of the Gaffney City Police Department searched the area where the gun was allegedly thrown and retrieved a black handgun.

The chase ended after the pursued car attempted to make a right hand turn and ran off the road and into a field. The two occupants then jumped from the car as it was still rolling, and fled. The driver of the vehicle was quickly apprehended and identified as appellant, Robert Miller.

Miller was placed in the back seat of Sergeant Mark Gooch's patrol car. Miller remained in the car for a period of fifteen to twenty minutes, while detectives and the crime scene unit responded to the scene. Sergeant Gooch testified that while en route to the detention center, Miller commented "I heard someone say something about a robbery. I don't know anything about a robbery. I wasn't even near an Alltel store." Miller also questioned what the crime scene officers were doing at the vehicle, and when the sergeant told him they were recovering evidence and asked Miller if he was worried about them finding his fingerprints on the guns, he stated, "my man had a gun." After hesitating, Miller then said, "if you will get a detective to talk to me, I'll tell them what they need to know." Officer Gooch stated that, while Miller was seated in his car, he did not mention a robbery or any charges against him to Miller. He admitted, however, that his police radio was on while Miller was seated in the car, and he did discuss these matters with other officers outside of the car, about fifteen feet behind the patrol vehicle.

Once he was transported to the local detention center, a datamaster test was administered. Trooper Godfrey testified he smelled an odor of alcohol on appellant and suspected appellant had been using marijuana. Based on the datamaster test, the trooper asked Miller to submit to a urine test and Miller refused. Trooper Godfrey charged Appellant with driving under the influence and Miller subsequently pled guilty to the charge.

The passenger from the vehicle was apprehended after he was found hiding in an outbuilding approximately two hundred yards from where the car was abandoned. This individual, identified as Tavo Glenn, was wearing a blue shirt and dark pants when apprehended. Mr. Glenn had several items in his possession when he was arrested including a little over four hundred dollars, a pair of latex gloves, and eight to ten rounds of .380 caliber pistol ammunition. A search of the automobile produced a .380 caliber silver handgun, found under the passenger seat.

Shortly after Glenn's apprehension, Captain Skinner of the Gaffney Police Department arrived on the scene and instructed one of his officers to take Glenn back to the Alltel store to be identified. When Glenn arrived at the Alltel store, the officers took him out of the patrol car and placed him in front of the vehicle, twenty to twenty-five feet from the front door of the store. Glenn was handcuffed and was the only civilian in the area, standing among police officers. The two employees positively identified Glenn as the perpetrator of the robbery. Thereafter, both Glenn and Miller were charged with armed robbery.

Appellant took the stand and admitted that he was the driver of the vehicle and that he intentionally failed to stop when he saw the police cars' blue lights. He claimed he did not see the lights while on Floyd Baker Boulevard, but noticed them after he cut through a parking lot, and thought he was being pulled for cutting through the lot to avoid a red light. Miller claimed that he rode with Glenn to Gaffney so that Glenn could get some marijuana. The two were riding around smoking and drinking and made some stops along the way for Glenn to sell some of the drugs. They also stopped for Miller to go to the bathroom, at which point he took over driving since Glenn's license had been suspended. Miller stated that

he failed to stop for the blue lights because he was on parole and he knew there was a gun in the car, as well as significant amounts of illegal drugs. At some point during the chase, Miller saw Glenn throw something out the window. He knew that Glenn was getting rid of the drugs, but he did not know if Glenn threw a gun out the window. Miller denied that he robbed anyone. He stated he did not know anything about the Alltel robbery until after he was put in the police car. While sitting in the car, he was listening to the police radio, and "heard them keep bringing up something about armed robbery." He stated he must have heard them specifically mention Alltel.

Prior to trial, defense counsel moved for a suppression hearing pursuant to *State v. Moore,* 343 S.C. 282, 540 S.E.2d 445 (2000), based on the unduly suggestive show-up identification of Tavo Glenn. Recognizing Glenn was not on trial in this case and had already been convicted in the matter, defense counsel nonetheless argued Miller was entitled to such a hearing as this was a "hand of one, hand of all case" and the identification of Glenn was a critical part of the State's case against Miller. The defense asserted the court needed to make a determination of the reliability of the evidence prior to the matter going before the jury.

The trial court pointed out that it had held such a hearing in Glenn's trial and, although it acknowledged that courts generally disfavor one person show-ups, the court had found the necessary requirements of the law met and admitted the identification in Glenn's trial. Because Glenn had already been tried and convicted, the court held that his identification was not an issue in Miller's case. Defense counsel countered the State elected to try Glenn and Miller separately, and as a result, Miller was not present during the proceedings in Glenn's trial dealing with the identification issue. He therefore never had the opportunity to cross-examine the witnesses. Finding no case law to give guidance on the matter, the court determined Miller was not entitled to an *in camera* hearing regarding the identification of Glenn as the perpetrator.

## LAW/ANALYSIS

Appellant argues the trial court erred by failing to conduct a suppression hearing related to the show-up identification of his alleged co-participant, Tavo Glenn. We agree.

South Carolina courts have consistently held that when identification of a defendant is at issue, "the general rule is that a trial court must hold an *in camera* hearing when the State offers a witness whose testimony identifies the defendant as the person who committed the crime, and the defendant challenges the in-court identification as being tainted by a previous, illegal identification or confrontation." *State v. Ramsey*, 345 S.C. 607, 613, 550 S.E.2d 294, 297 (2001) (citing *State v. Cash*, 257 S.C. 249, 185 S.E.2d 525 (1971)). In *State v. Simmons*, 308 S.C. 80, 417 S.E.2d 92 (1992), our Supreme Court noted the court had adopted a *per se* rule requiring the trial court to hold an *in camera* hearing in such situations. *Simmons*, 308 S.C. at 82–83, 417 S.E.2d at 93.

This court has also recently addressed the issue of a defendant's right to an *in camera* hearing concerning the admissibility of identification of the accused. In *State v. Cheatham*, 349 S.C. 101, 561 S.E.2d 618 (Ct.App.2002), this court recognized the *per se* rule adopted by our courts. *Cheatham*, 349 S.C. at 117–118, 561 S.E.2d at 627. There, the defendant moved for a hearing outside the presence of the jury regarding his identification pursuant to *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), *State v. Washington*, 323 S.C. 106, 473 S.E.2d 479 (Ct.App.1996), and Rule 104(c), SCRE. The trial judge denied this request. *Cheatham*, 349 S.C. at 112–13, 561 S.E.2d at 624–25. This court found Rule 104(c), SCRE, "unambiguously mandates hearings on the admissibility of out of court identifications of the accused shall in all cases be held outside the presence of the jury." Rule 104(c) provides as follows:

**Hearing of Jury. Hearings on** the admissibility of confessions or statements by an accused, and **pretrial identifications of an accused shall in all cases be conducted out of the hearing of the jury.** Hearings on other preliminary matters shall be so conducted when the interests of justice require, or when an accused is a witness and so requests.

Rule 104(c), SCRE (emphasis added).

In *Cheatham*, we pointed out that the *in camera* hearing required by Rule 104(c) allowed for a more vigorous cross-examination that might otherwise be curtailed if such an examination were conducted in the presence of the jury,

thereby requiring the defendant to risk alienating himself from the jurors. *Cheatham,* 349 S.C. at 117, 561 S.E.2d at 627. Based on Rule 104(c) and prior case law, this court reaffirmed the rule requiring an *in camera* hearing when a defendant challenges the in-court identification of defendant as being tainted by a previous illegal identification. *Cheatham,* 349 S.C. at 117–18, 561 S.E.2d at 626–27.

Although the procedures to be followed when a defendant challenges an in-court identification of himself on the basis that it has been tainted by a prior illegal or suggestive identification are clearly established, South Carolina courts have yet to address whether the same procedures are to be followed when, as here, the defendant seeks to challenge the identification of an alleged co-participant. The State contends Miller has no standing to challenge the line-up identification of another because constitutional rights are personal rights. Miller asserts, under the facts of this case, due process requires that he be allowed to challenge the identification process. He contends he was never identified as a participant in the robbery and his only connection to the robbery is that he was apprehended with Glenn. He further argues the issue is the reliability of the evidence.

While there are no South Carolina cases directly on point, other jurisdictions have examined the issue of whether a defendant has standing to challenge the identification of an alleged co-participant. In *People v. Bisogni,* 4 Cal.3d 582, 94 Cal.Rptr. 164, 483 P.2d 780 (1971), the defendant sought to challenge the show-up identification of one of his alleged co-participants in a robbery. The defendant introduced alibi evidence that he and his alleged co-participant were somewhere else on the night of the crime. *Id.* at 782. Therefore, if this co-participant were proven to be one of the perpetrators, it would effectively destroy the defendant's alibi.

The California Supreme Court noted the reason for excluding unfairly conducted show-up identification evidence is that such evidence is unreliable as a matter of law and may result in the conviction of innocent persons. As pointed out by that court, such evidence is equally unreliable whether it involves the identity of the defendant, or the identity of a co-participant. Based on the circumstances of that case, the court held

that "whenever the identity of a confederate is essential to prove the defendant's participation in a crime and when, as here, such evidence effectively destroys the defense offered by the defendant, he has standing to challenge the fairness of the identification procedures of the alleged co-participant." *Id.* at 783.

Similarly, in the more recent case of *State v. Clausell,* 121 N.J. 298, 580 A.2d 221 (1990), the Supreme Court of New Jersey considered the issue of a challenge to the identification of a co-defendant. In *Clausell,* as in *Bisogni,* defendant presented the alibi defense that neither he nor his co-defendant were at the scene of the crime. *Id.* at 234. Finding that the defendant did have standing to challenge the identification of his co-defendant, the court held that "[a]lthough a litigant generally may assert only his or her constitutional rights, when the party raising the claim is not simply an interloper and the proceeding serves the public interest, standing will be found." *Id.* (citations omitted). Noting that any evidence that placed the co-defendant at the scene of the crime bolstered the State's case against the defendant, the court held "[b]ecause defendant has a substantial personal stake in the admissibility of the identification evidence, ... [defendant] has standing to challenge the trial court's ruling on that question." *Id.*

A similar situation presents itself under the facts of the current case. As Miller points out, he was never identified by the victims of the robbery and the only thing linking him to the robbery of the Alltel store is the fact that he was apprehended in the company of Tavo Glenn, who in turn, was identified as the person who perpetrated the robbery. Neither of the eyewitnesses saw the car the robber may have used, much less whether there was another person involved who may have been the driver of that car. As in *Clausell* and *Bisogni,* the success or failure of Miller's defense—that he knew nothing about the robbery—turns largely on the identification of Tavo Glenn as the perpetrator of the crime.

The State argues that Miller does not have standing to challenge the identification procedure used in regard to Glenn because such rights are constitutional rights, personal to Glenn. We disagree. While a defendant challenging the

admissibility of evidence obtained in violation of constitutional rights must often show he is challenging the evidence based on a personal violation of his rights by the manner in which the evidence was obtained, a person requesting a hearing as to identification evidence is challenging the evidence based on the reliability of that evidence. For example, it is generally recognized that one does not have standing to challenge the admission of evidence obtained based on the violation of another's constitutional rights. Thus, where one does not have an expectation of privacy, he may not challenge the admission of evidence based on the violation of another's right to privacy. *See State v. McKnight,* 291 S.C. 110, 115, 352 S.E.2d 471, 473 (1987) (defendant who seeks to suppress evidence on Fourth Amendment grounds must demonstrate he has a legitimate expectation of privacy in connection with the searched premises in order to have standing to challenge the search). The concern under the current set of facts is not whether one's personal constitutional rights were violated in obtaining the evidence, but whether the evidence obtained is unreliable, such that failure to suppress the evidence violates one's due process rights. Accordingly, we find Miller has standing to challenge the reliability of the identification of Glenn.

The State contends, however, that even if there was error in the identification procedure, such error was harmless as the evidence of Miller's guilt was overwhelming, and was sufficient to conclusively establish his guilt beyond a reasonable doubt. Again, we disagree.

Whether an error is harmless depends on the circumstances of the particular case. *State v. Thompson,* 352 S.C. 552, 562, 575 S.E.2d 77, 83 (Ct.App.2003). Error is harmless when it could not reasonably have affected the result of the trial. *State v. Reeves,* 301 S.C. 191, 194, 391 S.E.2d 241, 243 (1990). "When guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached, the Court should not set aside a conviction because of insubstantial errors not affecting the result." *State v. Bailey,* 298 S.C. 1, 5, 377 S.E.2d 581, 584 (1989).

■ Here, assuming the identification evidence was improperly admitted, we cannot conclude it could not have reasonably affected the result of Miller's trial. Miller was never identified as a participant in the robbery of the Alltel store. Indeed, no direct evidence was presented that the robbery was accomplished by anyone other than a lone gunman. While we acknowledge that there is circumstantial evidence of Miller's participation in the crime by way of Miller's apprehension with Glenn and the circumstances surrounding that apprehension, it cannot be said that, without the identification of Glenn, Miller's guilt was conclusively proven by competent evidence such that no other rational conclusion could be reached. Accordingly, we find any error in the admission of the identification evidence was not harmless.

■ In light of the critical nature of the identification of Glenn to the State's case against Miller, we find, under the facts of this particular case, the interests of justice required a preliminary hearing be conducted outside the hearing of the jury on the pretrial identification of Glenn,[1] and the trial court erred in refusing to hold such a hearing. It does not follow, however, that Miller is entitled to a new trial. Rather, we remand this case to the trial court for the purpose of conducting an *in camera* hearing to determine whether the identification of Glenn was so tainted as to require its suppression at trial. Should such a finding be made, Miller will then be entitled to a new trial. *See State v. Simmons*, 308 S.C. 80, 83, 417 S.E.2d 92, 93–94 (1992) (proper remedy where court erroneously refuses to hold suppression hearing on identification is remand for such a hearing).

**REMANDED.**

STILWELL, J. and CURETON, A.J., concur.

1. As previously noted, Rule 104(c), SCRE provides that hearings on pretrial identifications of an accused shall be conducted out of the hearing of the jury, and "[h]earings on other preliminary matters shall be so conducted when the interests of justice require...."