[Nos. F005361, F006323. Fifth Dist. Jan. 17, 1986.]

In re BRYON S., a Person Coming under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
BRYON S. et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts I, III-B, III-C, and III-D.

COUNSEL

Jeff Reich and Margaret A. McKnight, under appointments by the Court of Appeal, for Defendants and Appellants.

John K. Van de Kamp, Attorney General, Eddie T. Keller and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MARTIN, J.—

### STATEMENT OF CASE AND FACTS

Two City of Fresno police officers testified to being on duty as members of a surveillance "tactical team" on November 27, 1984, when they each observed two young men, later identified as Bryon and one Terry B., alight from an El Camino pickup near the home of Frances Murrietta. The pickup was being driven by a third person, later identified as Bryon's brother, Kevin. One of the officers, Roger Enmark, observed the young men as they entered the Murrietta garage, exit the garage with a lawnmower, place the lawnmower in the back of the El Camino, and jump in the rear of the vehicle. The vehicle traveled approximately 100 feet before the officers stopped the vehicle and arrested those inside.

Sixteen-year-old Bryon testified he took the lawnmower from the garage only because Officer Enmark offered his brother money for them to do so.

On December 10, 1984, a petition was filed with the Fresno County Superior Court, Juvenile Division, alleging Bryon S. was a minor described in section 602 of the Welfare and Institutions Code[1] by virtue of his com-

---

[1]All statutory references are to the Welfare and Institutions Code unless otherwise specified.

mission of burglary in violation of Penal Code section 459 and grand theft in violation of Penal Code section 487, subdivision 1. Separate counsel were appointed to represent the minor and his father respectively.

On February 6, 1985, an adjudication hearing was held and the court found both counts to be true.

On February 20, 1985, a disposition hearing was held and the court adjudged Bryon to be a ward of the court, placed him on probation for a period not to exceed 18 months, committed him to custody for 90 days with 30 days stayed, 30 days of community service, and 30 days in custody.

A timely notice of appeal was filed on February 22, 1985. Appellants are the minor, Bryon S., and his father, Floyd S.

#### DISCUSSION

I. WHETHER THE JUVENILE COURT IMPROPERLY DENIED BRYON'S MOTION TO SUBSTITUTE ANOTHER ATTORNEY FOR THE PUBLIC DEFENDER*

. . . . . . . . . . . . . . . . . . . . . . . . . .

II. WHETHER THE JUVENILE COURT IMPROPERLY DENIED THE MOTION FOR SUBSTITUTION OF AN INTERPRETER FOR BRYON'S DEAF FATHER

Bryon's father, Floyd, who is deaf, repeatedly objected to the proceedings because he stated he could not understand the court-appointed deaf interpreter. Appellants assert reversible error occurred due to the trial court's denial of Floyd's motion for substitution of interpreters.

##### A. Standing

■ Respondent submits Bryon has no standing to complain about his father's asserted right to an interpreter at the adjudication hearing. According to respondent, because the California juvenile court rules specifically create a separate parental right of appeal in section 602 proceedings where physical custody of the minor is removed, any deprivation of rights claimed by the father should be asserted in his own appeal.

On October 28, 1985, this court granted Floyd's motion to allow a belated appeal in Bryon's case. Floyd has now done so and all issues raised by Floyd and by Bryon are addressed in this opinion. Thus, for all practical

---

*See footnote on page 822, *ante.*

purposes, respondent's "standing" argument is moot. Moreover, *In re Dargo* (1947) 81 Cal.App.2d 205 [183 P.2d 282] held the parents have a right to appeal and raise issues in the interest of the minor as well as themselves. Logic suggests the converse should also be true although neither counsel nor this court, in its independent research, have found any case which specifically deals with this issue. Further, and it may be a fine distinction, the minor is not here asserting his father's right to an interpreter that he, the father, could understand but rather his, the minor's, right to the full participation and assistance of his father in the juvenile court proceedings. If his father, for lack of an adequate interpreter, could not understand and thus assist his son, then it is the minor who is aggrieved and, in our view, has standing to raise the issue on appeal.

### B. Failure to Substitute Interpreters

Evidence Code section 754 provides in pertinent part: "(a) As used in this section, 'deaf person' means a person with a hearing loss so great as to prevent his or her understanding language spoken in a normal tone. [¶] (b) In any civil or criminal action, including any action involving a traffic or other infraction or any juvenile court proceeding, or any proceeding to determine the mental competency of a person, or any administrative hearing, where a party or witness is a deaf person and the deaf person is present in court and participating, *the proceedings shall be interpreted in a language that the deaf person understands by a qualified interpreter* appointed by the court, tribunal, or hearing officer, or as agreed upon by the parties. [¶] (c) For the purposes of this section, 'qualified interpreter' means only a person who meets both of the following criteria: (1) Has been issued a certificate of competency by the National Registry of Interpreters for the Deaf, or by a state group affiliated with the National Registry of Interpreters for the Deaf, or by any other group determined by the Judicial Council to possess a level of competence in training, testing, and certification of interpreters for the deaf equivalent to that of the National Registry of Interpreters for the Deaf, which certificate has been determined by the issuing agency to be appropriate for the purpose of interpreting the proceedings specified in subdivision (b). (2) Has been included on a list of recommended court interpreters which shall be established by the superior court in each county." (Italics added.)

Bryon's father, through his attorney, objected to the adjudication hearing and the dispositional hearing on the basis he did not understand what was happening as he was having trouble reading the lips of the court-appointed deaf interpreter, Betty Ingram.

At the request of the court, Betty Ingram stated for the record her qualifications as a lip synchronization interpreter including a comprehensive in-

terpreting certificate from the National Registry of Interpreters for the Deaf. She represented she holds a "Master's Comprehensive Certificate in Sign Language." Bryon's father then explained he understood she was certified as an interpreter but he could not understand her, therefore, he claimed she is not qualified to interpret for him. He acknowledged he did not know of anyone who could interpret better for him. He admitted to being able to read his wife's lips "pretty well" but did not want her acting as interpreter as she was a potential witness in the proceedings as well as a family member. Ms. Ingram proposed to use a combination of lipreading and writing longhand to interpret for Bryon's father. Bryon's father explained, however, that he has a third-grade education and cannot read "that well." He also stated, "She doesn't have the best handwriting to me."

Ms. Ingram indicated she observed Bryon's father apparently understood some of what she was telling him for "[H]e seems to respond appropriately when he focuses and we go slow. *I have worked with him over ten times.* When we go at a very slow pace—but, it is a difficult thing to do. [¶] Lip reading, you only grasp probably 40 percent max, the best lip reader grasps 40 percent. *I have in the past to be sure he's gotten the correct terminology, used the words and written them out by hand, so it's a very slow process —.*" (Italics added.)

The trial court expressed its concern but stated it did not know how to better the situation; the court decided to proceed on the basis the mother, who was without handicap, was present and to continue using Ms. Ingram as an interpreter for Bryon's father as she was of some help to him.

■ The parent or guardian has an absolute right to be represented by counsel at every stage of the proceedings. (§§ 633, 679; *In re Robert W.* (1977) 68 Cal.App.3d 705, 716 [137 Cal.Rptr. 558].) The trial court in this case determined Bryon's father had not only the right to a court-appointed attorney but also an interpreter for the deaf. Evidence Code section 754 requires the proceedings be interpreted for a deaf person in a language that the deaf person *understands* by a qualified interpreter appointed by the court.

The question then is whether the trial court fulfilled its statutory obligation in this regard. Bryon's public defender represented for the record this matter was originally set for trial on December 26, 1984. A defense motion to continue the trial because there was no adequate interpreter for Bryon's father, among other things, was granted. On January 2, 1985, an attorney was appointed for Bryon's father and the court determined the request of Bryon's father for a lipreading interpreter was a proper one. The court undertook a fairly extensive examination of people who qualify as a lip

synchronization interpreter and learned of Betty Ingram, who the court requested appear, at court expense, from Hayward, California.

Ms. Ingram represented to the court: "There are probably at least ten to fifteen people [who are certified for lipreading in the State of California], but there are only two of us to my knowledge that also hold legal experience. . . . [¶] And out of maybe that 15 or so, and I'm not sure on the figures exactly, many of those people are also hearing impaired, and basically what they function as very often is intermediaries."

Bryon's father admitted that no satisfactory interpreter could ever be found by the trial court, stating he did not know of an interpreter he could understand.[3]

Respondent suggests the presence of the parent or guardian at the *adjudication hearing*, in contrast to the dispositional hearing where physical custody may be removed, is not a physical prerequisite to the validity of the proceedings. It is respondent's position that any absence of the parents at the adjudication hearing, despite parental desires, is not fatally defective to the proceedings. Respondent relies on cases which hold the parents' presence is jurisdictional in situations where the minor was declared a ward of the court and the child's physical custody was removed from the parents. (*In re Moilanen* (1951) 104 Cal.App.2d 835, 842 [233 P.2d 91]; *In re Orosco* (1949) 92 Cal.App.2d 352, 359 [207 P.2d 656]; *In re Staser* (1948) 84 Cal.App.2d 746, 753 [191 P.2d 791]; *People* v. *Spiers* (1936) 17 Cal.App.2d 477 [62 P.2d 414].) Respondent contrasts this line of cases with *In re Charles P.* (1982) 134 Cal.App.3d 768 [184 Cal.Rptr. 707] in which it was held a minor may waive his constitutional rights and admit his guilt to a police officer without the presence of his parents. (*Id.,* at p. 780.) Similarly, in a section 602 adjudication hearing, a minor may admit the allegations of the petition without parental consent or involvement. (Cal. Rules of Court, rule 1354(c).)

We reject respondent's argument. In the instant case, Bryon did not admit the allegations of the petition. As we stated in part I (*ante*), the minor is

---

[3]On appeal, this court is asked to take judicial notice of two minute orders, the first dated February 23, 1984, and the second dated April 16, 1984, in which Fresno County Superior Court Judge Gene Gomes appointed Caroline Preston as oral sign language interpreter for defendant, Floyd S., Bryon's father. We are asked to take judicial notice of these minute orders to establish that other oral sign interpreters were available in addition to Ms. Ingram. However, these minute orders do not assist this court in determining whether Caroline Preston could be understood by Bryon's father. Indeed, the appointment of Caroline Preston occurred prior to the hearings in this case and, therefore, the father's denial of any knowledge of any interpreter he could understand suggests Caroline Preston was also found to be unsatisfactory.

entitled to the full participation and assistance of his father at the adjudication hearing as well as the disposition hearing.

■ It is respondent's final contention we find most convincing. Respondent argues any prejudice to the minor had to have been minimal under the facts of this case. Bryon's mother was present and at his side throughout the proceedings. Neither parent was a percipient witness to the crime and Bryon as well as his parents were represented by counsel. Thus, respondent argues, it is difficult to see how their presence enhanced the minor's defense. We would add that neither Bryon nor his father contend they had any problem communicating with each other. Nor does Floyd specifically state he had problems communicating with his own attorney or with counsel representing Bryon.

Were we to accept Floyd's argument literally, that he must be afforded an interpreter "he could understand," the juvenile court would find itself in a "catch 22" situation. Although Ms. Ingram had interpreted for Floyd on more than 10 prior occasions, he argued to the juvenile court he could not adequately understand her. The court was required under Evidence Code section 754 to conduct the proceedings in a language the deaf person understands by a qualified interpreter appointed by the court. Floyd suggests he is thus entitled to an interpreter he fully, completely understands. Floyd does not "sign" and he admitted not being able to read well with his limited education. He reads lips. He rejected his wife as an interpreter for him. Ms. Ingram testified, without contradiction: "Lipreading you only grasp probably 40 percent max, the best lipreader grasps 40 percent." Floyd admitted no satisfactory interpreter could ever be found by the trial court, stating he did not know of an interpreter who he understands. Thus, as Floyd's argument goes, the court is at an impasse. It cannot proceed without furnishing Floyd a satisfactory interpreter and there is no such interpreter available. Therefore, the court cannot proceed to adjudication (or disposition) of the petition against Bryon.

In our view, compliance with Evidence Code section 754 does not require such a result. Floyd's rights to an interpreter are purely statutory. He does not come within the class guaranteed an interpreter by the California Constitution. (*Post,* p. 831.) Section 754 of the Evidence Code requires only that "the proceedings shall be interpreted in a language the deaf person understands by a qualified interpreter . . . ." We hold Evidence Code section 754 does not require complete or total comprehension by the deaf person. Such a rule would be difficult if not impossible to satisfy and easily manipulated by a person intent on frustrating the judicial process. That Ms. Ingram is a "qualified" interpreter for the deaf is not in dispute. That she was the best available interpreter, in view of Floyd's needs, is apparent

from the record. The juvenile court went to great effort to locate an interpreter with Ms. Ingram's skills and to arrange for her attendance at the hearing. Using a combination of lipreading and writing out portions of the oral proceedings, she was able to assist Floyd in understanding and actively participating in the adjudication hearing. We cannot perceive what more the court could do under the existing circumstances. We conclude that nothing more was reasonably required by the court below to satisfy the requirements of Evidence Code section 754. Moreover, it does not appear from the record that either Bryon or Floyd was prejudiced by the court's actions.

## III. Other Allegations of Error

### A. Oath Required of Interpreter

■ Appellant complains Ms. Ingram was not sworn in as an interpreter pursuant to Evidence Code section 751 immediately upon commencement of the proceedings. Ms. Ingram was not under oath during the hearing to determine whether she was competent and qualified to interpret for Bryon's father. She was, however, formally sworn as an interpreter prior to any evidence being received against Bryon.

Evidence Code section 751 provides as follows: "(a) An interpreter shall take an oath that he or she will make a true interpretation to the witness in a language that the witness understands and that he or she will make a true interpretation of the witness' answers to questions to counsel, court, or jury, in the English language, with his or her best skill and judgment. [¶] (b) A translator shall take an oath that he or she will make a true translation in the English language of any writing he or she is to decipher or translate. [¶] (c) An interpreter or translator regularly employed by the court and certified in accordance with Article 4 (commencing with Section 68560) of Chapter 2 of Title 8 of the Government Code, may file an oath as prescribed by this section with the clerk of the court. The filed oath shall serve for all subsequent court proceedings until the appointment is revoked by the court."

Appellant relies on the case of *People* v. *Chavez* (1981) 124 Cal.App.3d 215 [177 Cal.Rptr. 306], in which the First Appellate District held a non-English-speaking defendant was denied his constitutional right to an interpreter where at various times he was wholly without an interpreter, utilized his counsel as an interpreter, had an official interpreter who paraphrased the plea proceedings, and utilized an unofficial interpreter. *Chavez* is clearly distinguishable on its facts. That case involved "exceptional circumstances" in which defense counsel acted as interpreter on several occasions but was sworn as an interpreter on only one occasion. (*Id.*, at pp. 219, 221-222.)

*Chavez* further found "[t]he right to an interpreter having . . . been guaranteed in the Constitution, it may not validly be waived without an 'affirmative showing,' on the record, of a waiver which was 'intelligent and voluntary' on the part of the affected defendant. [Citations.]" (*Id.,* at p. 227.)

The California Supreme Court agreed with the holding in *Chavez* and held a personal waiver by a non-English-speaking defendant was required to voluntarily and intelligently waive his constitutional right to an interpreter in *People* v. *Aguilar* (1984) 35 Cal.3d 785, 794 [200 Cal.Rptr. 908, 677 P.2d 1198].)

These and subsequent cases following the rule of *Aguilar,* are premised upon the constitutional guaranty provided by article I, section 14 of the California Constitution which provides in pertinent part: "A person unable to understand English who is charged with a crime has a right to an interpreter throughout the proceedings." However, Bryon's father is not a person "unable to understand English who is charged with a crime." Therefore, he does not come within the class protected by said section.

In *People* v. *Mora* (1984) 153 Cal.App.3d 18 [199 Cal.Rptr. 904], a pre-*Aguilar* case, a qualified interpreter was at the defendant's elbow throughout the proceedings competently interpreting, and "the only conceivable flaw" was the trial court's inadvertent failure to readminister the oath after the interpreter's sworn service in the related, immediately preceding matter. The Second District Court of Appeal found such failure to comply with the statutory requirement of the oath did not render the services of Mora's interpreter constitutionally ineffective and did not deprive Mora of his constitutional right to an interpreter throughout the proceedings. (*Id.,* at p. 23.)

From the record it appears the interpreter was sworn immediately after the court concluded its questions regarding her qualifications and the discussion between the court, Ms. Ingram, Floyd and counsel regarding her adequacy. Thereafter, she, Floyd and Bryon had a conference off the record. Bryon's father then stated for the record that although he formally objected to the proceeding on the grounds that Ms. Ingram is not a qualified interpreter, he personally stated he thought "she should stay."

We conclude the failure to immediately swear Ms. Ingram does not constitute reversible error. The failure did not materially affect the regularity of the adjudication hearing nor the determination by the juvenile court. (See *People* v. *Carreon* (1984) 151 Cal.App.3d 559, 573-574 [198 Cal.Rptr. 843].) The minor has not shown any prejudice from the initial failure to swear in Ms. Ingram pursuant to Evidence Code section 751.

## B. *Improper Positioning of Interpreter\**

. . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Franson, Acting P. J., and Best, J., concurred.

A petition for a rehearing was denied February 11, 1986, and appellants' petition for review by the Supreme Court was denied April 16, 1986.

---

*See footnote on page 822, *ante*.