41 Cal.App.4th 1557 (1996)
49 Cal. Rptr.2d 200
In re NACHELLE S., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Petitioner and Respondent,
v.
ETTE L., Objector and Appellant.
Docket No. B089459.
Court of Appeals of California, Second District, Division Three.
January 25, 1996.
*1558 COUNSEL
Jane Winer for Objector and Appellant.
De Witt W. Clinton, County Counsel, Elizabeth Kim and Sterling Honea, Principal Deputy County Counsel, for Petitioner and Respondent.
OPINION
ALDRICH, J. 

INTRODUCTION
Ette L. appeals from the order terminating parental rights, contending the trial court erred in failing to order "ongoing and frequent" sibling visitation for the minor, Nachelle S., as part of the permanent plan. We hold Ette does not have standing to raise this contention on appeal. Even were she to have standing, we conclude no error was committed. The statute upon which she relies was not in effect at the time the trial court filed the order terminating her rights. The order appealed from is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND
Nachelle S. was born on June 22, 1992. The mother, Ette was incarcerated when she gave birth to Nachelle and has a 15-year history of drug abuse, *1559 mental and emotional problems, and extremely violent behavior.[1] The father's whereabouts were initially unknown and he has never provided the minor with the necessities of life.[2] Days after her birth, proceedings were instituted under Welfare and Institutions Code section 300[3] and Nachelle was placed in the foster home of Mr. and Mrs. S. Nachelle is faring well in her foster placement and Mr. and Mrs. S. indicated a willingness to adopt her.
Nachelle has five siblings who, in 1994, were ages 20, 18, 16, 12 and 9. The three eldest siblings, Natasha C., Emmanuel C., and Kiandra C., currently live with Ette. The two other siblings and Nachelle are under the supervision of the juvenile court, and are currently in permanent placements because of their mother's drug abuse, neglect and inability to parent.
Early on, the social worker for the Los Angeles County Department of Children and Family Services (the Department) investigated the possibility Nachelle could be placed with the same foster family that had been caring for her sibling, Andre, age seven, for two years. However, Andre's foster mother indicated she was caring for three other foster children ranging in age from six months to eight years, and had no room for Nachelle. Over the course of two years, Nachelle visited with three of her siblings: once with Andre, three times with her eldest sister, Natasha C., and at least five times with her sister Kiandra.
In January 1994, the Department conducted a permanency planning assessment and recommended adoption for Nachelle. The Department recommended, as the result of Ette's recent release from prison and regular visits with the minor, the court reassess the long-term foster care recommendation in three months. It was further recommended the child be referred for adoption planning if the parents failed to resolve their drug and alcohol problems. At the permanent planning hearing, held on January 12, 1994, the court terminated reunification services, without precluding "informal reunification services," and scheduled the section 366.26 hearing.
The hearing pursuant to section 366.26 was continued several times. At one such continuance, necessitated by a missing file, the court ordered Nachelle's adult sibling could have visitation rights once the Department had done a check on her.
*1560 At the four-day contested selection and implementation hearing, Ette testified her older children wanted Nachelle to remain part of the family. The older children indicated they would help Ette care for Nachelle. Dr. Hirsch, the psychologist who evaluated Ette and the father, opined emotional and physical limitations and their living circumstances prevented Nachelle's birth parents from providing adequate care or parenting for the minor.
On December 20, 1994, the court terminated parental rights, finding reasonable reunification services had been provided. The court further found by clear and convincing evidence Nachelle would likely be adopted and that such action was in the girl's best interests. In doing so, the court urged the adoptive parents to allow reasonable visitation with any relative.
Ette filed this timely appeal.

DISCUSSION
(1) In this appeal, Ette does not ask that the order terminating parental rights be reversed. Rather, Ette seeks to have the case remanded so the court may provide in the permanent plan for "ongoing and frequent" sibling visitation with all of Nachelle's siblings, pursuant to subdivision (b) of section 16002.[4]
We conclude as Nachelle's mother, Ette has no standing to raise the minor's right to a court order concerning visitation with her siblings.
Section 902 of the Code of Civil Procedure provides, "[a]ny party aggrieved may appeal" in civil cases such as this. (See In re Ann S. (1982) 137 Cal. App.3d 148, 150 [188 Cal. Rptr. 1]; In re Bryon S. (1986) 176 Cal. App.3d 822, 825-826 [223 Cal. Rptr. 319].)
Ette argues she has standing to raise the issue of a sibling-visitation order notwithstanding her parental rights have been terminated, because "a parent has standing to raise issues of minors' best interests." In support of this *1561 proposition, Ette cites In re Bryon S., supra, and In re Ann S., supra. These cases are distinguished.
The court in In re Bryon S. held two reasons justified a finding the minor had standing to assert his father's right to an interpreter in a juvenile court action charging Bryon with robbery. First, parents have a right to appeal and raise issues in the interest of the minor as well as themselves, and so the converse should be true. Second, the minor was not asserting his father's right to an interpreter so that the father could understand, but rather the minor's right to the full participation and assistance of his father in the juvenile court proceedings, which participation had been impeded by the lack of an adequate interpreter. (In re Bryon S., supra, 176 Cal. App.3d at p. 826.) In that sense, the minor was aggrieved.
In re Ann S. concerned the standing of parents in a juvenile court proceeding concerning taking the minor's physical custody from the parents. In summary fashion, the appellate court concluded the parents were aggrieved by the failure of the court to appoint a new attorney for the minor. (In re Ann S., supra, 137 Cal. App.3d at p. 150.) Because these two cases cited by Ette concern the standing of parents who are aggrieved, they are irrelevant.
Instead, In re Daniel D. (1994) 24 Cal. App.4th 1823 [30 Cal. Rptr.2d 245] is dispositive here. There, the mother, Stacy, appealed from the court's order terminating her parental rights pursuant to section 366.26, raising among other things, the court's denial of the minor's maternal grandmother's request to be accorded de facto parent status. In rejecting this contention, the Court of Appeal held Stacy lacked standing to raise that issue because her interests were not prejudiced by the denial of de facto status to the grandmother. The court explained, "Stacy's interest in the dependency proceedings was to reunify with her dependent child Daniel. However, a `de facto parent's nexus with the proceeding is that person's separate interest and relationship with the child, which may have developed over time through the daily care, affection and concern for the child. [Citation.]' [Citation.] The de facto parent's interest is not `in acting as an advocate to preserve the natural parent's bond with the child.' [Citation.] The fact Stacy's mother (Daniel's maternal grandmother) was not accorded de facto parent status did not preclude Stacy from presenting any evidence about Daniel's best interest or Stacy's relationship with Daniel. [Citation.] Thus, because she is not aggrieved by denial of the maternal grandmother's request for de facto parent *1562 status, Stacy may not challenge such ruling on appeal." (24 Cal. App.4th at pp. 1835-1836.)
Here, Ette is not aggrieved by the court's determination concerning Nachelle's visits with her siblings. Ette's interest in these proceedings was to reunify with Nachelle. In this appeal, Ette does not raise errors which affect her own rights: as previously noted, she does not challenge the process and decision to terminate her parental rights. Rather, Ette raises Nachelle's right, in the future, to visit with her own siblings. However, as with a de facto parent, the siblings' connection with the proceeding is their interest and relationship with the minor. Moreover, orders concerning the minor's siblings' visits do not preclude Ette from presenting evidence about Nachelle's best interests or about Ette's relationship with the girl. (24 Cal. App.4th at p. 1836.)
Ette's further contention she has the right to raise any issue of the minor's best interests is unpersuasive. By that logic, anyone would have the right to raise issues which do not injure them, eviscerating the "aggrieved" requirement of Code of Civil Procedure section 902. In the final analysis, Ette is seeking to raise the issue of visitation on behalf of her children who are not minors but who happen to live with Ette, thereby circumnavigating the order terminating her parental rights.
Even were she to have standing to raise this visitation issue, we conclude Ette's contention is groundless. The challenge is based on section 16002, subdivision (b). This statutory provision was enacted in 1994 (Stats., 1994 Reg. Sess., ch. 663, § 4), to take effect on January 1, 1995. (Cal. Const., art. IV, § 8, subd. (c)(1).) Therefore when the trial court made its ruling on December 20, 1994, the provision upon which Ette relies was not yet effective. Instead, the statute merely provided that the court "... ensur[e] that when siblings have been removed from their home, either as a group on one occurrence or individually on separate occurrences, the siblings will be placed in foster care together...." (§ 16002, subd. (a), italics added.) The record shows the Department social worker did investigate placing Nachelle with Andre's foster family, but they declined to take Nachelle. Otherwise, section 16002 did not require arrangements be made for "ongoing and frequent" sibling visitation.
In sum, because Ette is not aggrieved by the court's order concerning Nachelle's relations with her siblings, she has no standing to raise the issue on appeal.

*1563 DISPOSITION
The order is affirmed.
Klein, P.J., and Croskey, J., concurred.
A petition for a rehearing was denied February 26, 1996, and appellant's petition for review by the Supreme Court was denied April 11, 1996.
NOTES
[1] Ette was serving time for convictions of attempted robbery, assault with a deadly weapon and terrorist threats against Nachelle's maternal grandmother. The record shows Ette has a history of violent behavior, having been arrested previously for assault with caustic chemicals, robbery and vandalism.
[2] In 1993, the father appeared, but by the time permanency placement hearings were held, the father had left town.
[3] Hereinafter, all statutory references shall be to the Welfare and Institutions Code, unless otherwise noted.
[4] Section 16002, subdivision (b) provides, "The responsible local agency shall make a diligent effort in all out-of-home placements of dependent children, including those with relatives, to maintain sibling togetherness and contact. When maintaining sibling togetherness is not possible, diligent effort shall be made, ... to provide for ongoing and frequent interaction among siblings until family reunification is achieved, or, if parental rights are terminated, as part of developing the permanent plan for the child."