[No. G019615. Fourth Dist., Div. Three. Jan. 28, 1997.]

In re ELIZABETH M., a Person Coming Under the Juvenile Court Law.
ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and
Respondent, v.
PEGGY M., Defendant and Appellant.

**COUNSEL**

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Laurence M. Watson, County Counsel, and Michelle Ben-Hur, Deputy County Counsel, for Plaintiff and Respondent.

Harold LaFlamme and Karen S. Cianfrani, under appointments by the Court of Appeal, for Minor.

W. Breck MacLaren for Foster Parents.

**OPINION**

**WALLIN, J.**—Peggy M. appeals from the judgment terminating her parental rights to her daughter, Elizabeth, claiming the juvenile court should have found their relationship beneficial to Elizabeth such that termination would be detrimental to her. Peggy also appeals the denial of her motion under

Welfare and Institutions Code section 388[1] requesting placement of Elizabeth with her cousins. We affirm.

Elizabeth was born in March 1993 with a positive toxicology screen for cocaine and amphetamine. She was made a dependent of the juvenile court and released to her mother four months later. Dependency jurisdiction was terminated in July 1994. In September, police responded to a report of child neglect by a neighbor and discovered Elizabeth and her 10-year-old brother Bobby had been left alone by the mother for approximately 21 hours. The neighbor reported the mother was on a binge using speed; she often went on such binges and usually returned within three days. Dependency petitions were filed on behalf of both children; Bobby was placed in a group home and Elizabeth was placed in a foster home.

The social worker reported the mother and father, who lived in Missouri, had been married but were divorced in 1982. Nevertheless, they had three children, Ricky, born February 1978, Bobby, born April 1984, and Elizabeth. The mother lived in Missouri until 1992, when she came to California without her children. She has traveled to Missouri several times since then; and in September 1993, she brought Bobby to California with her. The mother admits she has a chronic drug problem; the father reportedly has an alcohol problem and becomes verbally abusive when drunk. The mother's father, siblings, and various extended family members all live in Missouri. The mother and father agreed the father should have custody of both Bobby and Elizabeth.

In May 1995, the social worker reported the mother had completed a residential recovery program in February and was enrolled in a drug and alcohol counseling program. She had started parenting classes and was employed. Her visits with Elizabeth were consistent and appropriate. By September, she was visiting Elizabeth three times a week, including family counseling with Elizabeth and Bobby at his group home. The mother had lost her job, however, and was dependent on her boyfriend for housing and support. Her counselor described the relationship with the boyfriend as "tentative" and reported that the mother "still operates in a crisis most of the time." The social worker expressed cautious optimism, but denominated reunification as "premature."

During the next two months, the mother's behavior began going downhill. She stopped the family counseling sessions with the two siblings and canceled half of her visits with Elizabeth. She expressed concern about the stability of her relationship with her boyfriend, but refused to follow up on

---

[1]All statutory references are to the Welfare and Institutions Code.

referrals to shelters and a residential treatment center that would house both her and her children. She was discharged from her drug maintenance program for lack of attendance, and she admitted to some alcohol consumption. She called the social worker three times in November, relating that she was having a hard time resisting the temptation to resume using drugs. In December, she succumbed to temptation and used cocaine several times. She was arrested for prostitution and incarcerated.

At the 12-month review on December 14, the court terminated reunification services and set both cases for a selection and implementation hearing. The father had not responded to calls from the social worker, but the mother's cousin and his wife, Dan and Vickie H., who lived in Missouri, expressed interest in providing a permanent home for both children. Orange County Social Services Agency (SSA) initiated an investigation under the Interstate Compact for the Placement of Children to determine the suitability of their home. The court authorized Bobby to visit Dan and Vickie for the Christmas holidays, but not Elizabeth.

The selection and implementation hearing was held on April 16, 1996. The day before, the mother filed a petition requesting a hearing under section 388. She asked that Elizabeth's placement be changed from her foster family, who wanted to adopt her, to Dan and Vickie, who also wanted to adopt her. Before proceeding with the selection and implementation hearing, the trial court heard argument on the motion and denied it on several grounds: "The petition is not properly verified. The timeliness of the petition also gives the court a great deal of concern. And, in addition to that, the court has difficulty seeing any change of circumstances, and certainly does not see this as being in the best interest of the minor."

The juvenile court proceeded to terminate the mother and father's parental rights to Elizabeth, finding that none of the statutory exceptions to adoption applied. (§ 366.26, subd. (c)(1)(A)-(D).) Bobby, who was 13 at that time, asked that the parental rights of his mother and father not be terminated; he was continued in long-term foster care pending possible placement with Dan and Vickie.

*I*

■ Mother argues the juvenile court erroneously refused to hear her motion under section 388. She claims she substantially complied with the filing requirements, and, in light of the directive to liberally construe such a

petition in favor of its sufficiency (Cal. Rules of Court, rule 1432)[2], the court should have set the matter for a full evidentiary hearing.

Section 388 provides, "Any parent or other person having an interest in a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made . . . . [¶] If it appears that the best interests of the child may be promoted by the proposed change of order . . . , the court shall order that a hearing be held and shall give prior notice . . . to such persons and by such means as prescribed by Section 386 . . . ."

The petition under section 388 can be denied ex parte only if it fails to make a prima facie showing of change of circumstances or new evidence that suggests the proposed change of order would promote the best interest of the child. (*In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1414 [5 Cal.Rptr.2d 148]; rule 1432(b).)

Here, the juvenile court was justified in denying the petition without a full hearing because there was no showing that a change in placement at this time would promote Elizabeth's best interests.[3] The circumstances listed in support of changing Elizabeth's placement were the willingness and suitability of Dan and Vickie to be Elizabeth's adoptive parents; the likelihood of Bobby's permanent placement with them; their recent three-day visit to California to visit with both children; and their good relationship with and proximity to Elizabeth's extended biological family. But Elizabeth had met Dan and Vickie only once, while she had lived with her foster parents for almost half her life. She had a strong bond to them and they had indicated their desire to provide her a permanent home.

The social worker fairly reported the strengths of both the foster parents and Dan and Vickie as prospective adoptive parents for Elizabeth. She recommended neither in her report because neither had a completed adoptive home study. Pending the evaluation of both families, Elizabeth's best interests clearly were served by leaving her where she was happy and adjusted. This is not to suggest the foster parents will necessarily be the preferred adoptive home, but at this juncture it would have been premature to change Elizabeth to an unfamiliar home. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 325-326 [27 Cal.Rptr.2d 595, 867 P.2d 706].)

---

[2]All rule references are to the California Rules of Court.

[3]We note the mother did not check the box requesting a separate hearing. Neither did her counsel request a continuance of the impending selection and implementation hearing to accommodate a separate hearing.

SSA and the minor argue the mother lacks standing to raise the issue of Elizabeth's placement because it does not directly impact her interest in custody and care of Elizabeth. In support of this proposition, they cite several recent decisions in which a parent was held to lack standing when he or she appealed from a judgment of termination raising only the issue of placement or sibling visitation. (*In re Jasmine J.* (1996) 46 Cal.App.4th 1802 [54 Cal.Rptr.2d 560]; *In re Nachelle S.* (1996) 41 Cal.App.4th 1557 [49 Cal.Rptr.2d 200]; *In re Gary P.* (1995) 40 Cal.App.4th 875 [46 Cal.Rptr.2d 929].)

None of the foregoing cases involved section 388. Here, the mother is appealing the denial of her petition for a hearing under section 388. She is statutorily empowered to file such a petition, and her interest in doing so is to promote the best interests of the child (§ 388), not her interest in custody or reunification. The denial of that petition is reviewable on appeal (*In re Daniel D.* (1994) 24 Cal.App.4th 1823, 1832-1833 [30 Cal.Rptr.2d 245]; see also *In re Stephanie M.*, *supra*, 7 Cal.4th 295); as the petitioner, she must have standing to appeal the ruling.

## II

■ The mother next argues the juvenile court should have found that termination would be detrimental to Elizabeth because the mother had "maintained regular visitation and contact with the minor and the minor would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(A).) This argument borders on the frivolous.

The type of parent-child relationship sufficient to derail the statutory preference for adoption is one in which "regular visits and contact have continued or developed a significant, positive, emotional attachment from child to parent." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575 [32 Cal.Rptr.2d 535].) Such a relationship "arises from day-to-day interaction, companionship and shared experiences." (*Ibid.*) While the mother's visitation with Elizabeth had been consistent and positive during a previous period of time, during the six months preceding the selection and implementation hearing it had been sporadic. Even when the visits were consistent and frequent, the mother did not occupy a parental role. At best, she occupied a pleasant place in Elizabeth's life. This is insufficient to deny a child who cannot be returned to her parents the secure and permanent home decreed by the Legislature to be in her best interests. (*In re Beatrice M.* (1994) 29 Cal.App.4th 1411, 1418-1420 [35 Cal.Rptr.2d 162].)

The order denying the petition under section 388 and the judgment terminating parental rights are affirmed.

Crosby, Acting P. J., and Rylaarsdam, J., concurred.