626 S.E.2d 328

**The STATE, Petitioner,**

v.

**Robert Earl MILLER, Respondent.**

**No. 26106.**

Supreme Court of South Carolina.

Heard Nov. 16, 2005.

Decided Feb. 6, 2006.

330

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Charles H. Richardson, all of Columbia, and Solicitor Harold W. Gowdy, III, of Spartanburg, for petitioner.

William G. Rhoden, of Winter & Rhoden, of Gaffney, for respondent.

Justice MOORE:

Respondent was convicted of armed robbery, failure to stop for a police vehicle, and unlawful possession of a pistol. He

was sentenced to concurrent terms of imprisonment of twenty-four years for armed robbery, three years for failing to stop, and one year for the pistol charge. Respondent's alleged accomplice, Tavo Glenn (Glenn), was arrested at the same time as respondent and was tried and convicted prior to respondent's trial. We granted this writ of certiorari to determine whether the Court of Appeals properly reversed and remanded this case for an *in camera* hearing to determine whether the identification of respondent's alleged accomplice was so tainted as to require its suppression at respondent's trial. *See State v. Miller*, 359 S.C. 589, 598 S.E.2d 297 (Ct.App.2004). We affirm.

## ISSUE

Did the Court of Appeals err by remanding the case to the trial court?

## FACTS

The following evidence was introduced at respondent's trial. About 4:00 p.m. on October 5, 2001, the Alltel Communications store on Floyd Baker Boulevard in Gaffney, South Carolina, was robbed. The perpetrator entered the store with his back to the store's two female employees. As he turned to face the employees, he pulled a black mask over his face, brandished a black handgun, and ordered the employees to fill a bag with money.

The two employees began filling the bag with money from one of the store's cash registers. Keys could not be found to the second cash register and the store safe was found to be empty. Realizing they would not be able to open the second register, the man took both employees into the back of the store and made them lie down on the floor. The employees did as instructed until they heard the front door buzzer. Assuming the robber had left the store, the employees went to the front of the store, locked the door, and called 911.

The robbery lasted approximately ten minutes and resulted in a little over four hundred dollars being stolen. When police arrived, the employees described the robber as a black male wearing a blue shirt and dark pants.

Shortly after beginning his 4:00 shift, Trooper Johnnie Godfrey was traveling on Floyd Baker Boulevard near the Alltel store when a vehicle came from his right and cut him off. Trooper Godfrey testified he turned on his blue lights and attempted to pull over the car for the purpose of issuing a warning for improper lane change and failure to yield the right-of-way. The car pulled into a parking lot, but did not stop, instead exiting on another street and heading up the interstate. A pursuit ensued involving officers from several law enforcement agencies.

The fleeing car sideswiped another car and turned off the interstate. A bystander testified she observed the chase and, as the car approached her, she saw a gun tossed from the passenger side window. An officer searched the area where the gun was allegedly thrown and retrieved a black handgun.

The chase ended after the car attempted to make a right turn and ran off the road into a field. The two occupants fled from the car. The driver of the vehicle was quickly apprehended and identified as respondent.

Respondent was placed in the back of Sergeant Mark Gooch's patrol car. Respondent remained in the car for roughly twenty minutes, while detectives and the crime scene unit responded to the scene. Sergeant Gooch testified that while en route to the detention center, respondent commented, "I heard someone say something about a robbery. I don't know anything about a robbery. I wasn't even near an Alltel store." Respondent also questioned what the crime scene officers were doing at the vehicle, and when the sergeant told him they were recovering evidence and asked respondent if he was worried about them finding his fingerprints on the gun, he stated, "my man had a gun." After hesitating, respondent then said, "if you will get a detective to talk to me, I'll tell them what they need to know." Officer Gooch stated that, while respondent was seated in the patrol car, he did not mention a robbery or any charges against him to respondent. He admitted, however, that his police radio was on while respondent was seated in the car, and he had discussed the robbery with other officers outside of the car.

Trooper Godfrey testified he smelled an odor of alcohol on respondent and also suspected he had been using marijuana.

Once respondent was transported to the local detention center, a DataMaster test was administered. Based on the DataMaster test, the trooper asked respondent to submit to a urine test and respondent refused. Trooper Godfrey charged respondent with driving under the influence and respondent subsequently pled guilty to the charge.

The passenger from the vehicle was apprehended shortly after respondent and identified as Tavo Glenn. He was wearing a blue shirt and dark pants when apprehended. Glenn had several items in his possession when he was arrested, including a little over four hundred dollars, a pair of latex gloves, and eight to ten rounds of .380 caliber pistol ammunition. A search of the automobile produced a .380 caliber silver handgun, found under the passenger seat.

Shortly after Glenn's apprehension, Officer Chris Skinner of the Gaffney Police Department arrived and instructed one of his officers to take Glenn back to the Alltel store to be identified. When Glenn arrived at the Alltel store, the officers took him out of the patrol car and placed him in front of the vehicle, twenty to twenty-five feet from the front door of the store. Glenn was handcuffed and was the only civilian in the area, standing among police officers. The two employees positively identified Glenn as the perpetrator of the robbery at that time and they reiterated that pre-trial identification at respondent's trial.[1] Thereafter, both Glenn and respondent were charged with armed robbery.

At his trial, respondent took the stand and admitted he was the driver of the vehicle and that he intentionally failed to stop when he saw the police car's blue lights. He claimed he did not see the lights while on Floyd Baker Boulevard, but noticed them after he cut through a parking lot, and thought he was being pulled for cutting through the lot to avoid a red light. Respondent claimed he rode with Glenn to Gaffney so that Glenn could purchase some marijuana. The two were riding around smoking[2] and drinking and made some stops along the

---

**1.** An in-court identification of Glenn was not conducted at respondent's trial.

**2.** Respondent stated they were smoking a blunt or "boonk," which is a marijuana joint with either powder cocaine or rock cocaine added to the joint.

way for Glenn to sell drugs. They also stopped for respondent to go to the bathroom, at which point he took over driving since Glenn's license had been suspended. Respondent stated he failed to stop for the blue lights because he was on parole and he knew there was a gun in the car, as well as significant amounts of illegal drugs. At some point during the chase, respondent saw Glenn throw something out the window. He knew that Glenn was getting rid of the drugs, but he did not know if Glenn threw a gun out the window. Respondent denied he robbed anyone. He stated he did not know anything about the Alltel robbery until after he was placed in the police car. While sitting in the car, he was listening to the police radio, and "heard them keep bringing up something about armed robbery." He stated he must have heard them specifically mention Alltel. He also testified that he did not say, "My man had a gun," but that he said, "If my man had a gun, I don't know."

Prior to trial, defense counsel moved for a suppression hearing based on the unduly suggestive show-up identification of Glenn. Recognizing Glenn was not on trial in this case and had already been convicted in the matter, defense counsel nonetheless argued respondent was entitled to such a hearing as this was a "hand of one, hand of all case" and the identification of Glenn was a critical part of the State's case against respondent. The defense asserted the court needed to make a determination of the reliability of the evidence prior to the matter going before the jury.

The trial court pointed out that it had held such a hearing in Glenn's trial and, although it acknowledged that courts generally disfavor one-person show-ups, the court had found the necessary requirements of the law met and admitted the identification in Glenn's trial.[3] Because Glenn had already been tried and convicted, the court held that his identification was not an issue in respondent's case. Defense counsel countered that the State elected to try Glenn and respondent separately, and as a result, respondent was not present during the proceedings in Glenn's trial dealing with the identification

---

3. The Court of Appeals found the trial judge did not err by admitting Glenn's identification at his own trial. *State v. Glenn*, Op. No. 2003–UP–515 (S.C. Ct.App. filed August 27, 2003). We denied Glenn's petition for a writ of certiorari to review that decision.

issue. He therefore never had the opportunity to cross-examine the witnesses. Finding no case law to give guidance on the matter, the court determined respondent was not entitled to an *in camera* hearing regarding the identification of Glenn as the perpetrator. The Court of Appeals disagreed and remanded for an *in camera* hearing regarding the reliability of Glenn's identification.

## DISCUSSION

The State argues the Court of Appeals erred by remanding the case for an *in camera* hearing because respondent lacks standing to challenge the reliability of Glenn's identification; and even if respondent has standing, any error in the admission of Glenn's identification was harmless in light of the overwhelming evidence against him.

### *Standing*

Whether a defendant has standing to challenge the identification of an alleged co-participant in a crime is a novel issue in South Carolina.

The Court of Appeals concluded the trial court erred by failing to conduct a suppression hearing regarding the reliability of Glenn's show-up identification. Noting that respondent was never identified by the victims of the robbery and that the only thing linking him to the robbery of the Alltel store is the fact that he was apprehended in the company of Glenn, who in turn, was identified as the person who perpetrated the robbery, the Court of Appeals found that respondent had standing to challenge Glenn's identification. The court distinguished the present case from those where defendants have unsuccessfully sought to exclude incriminating evidence obtained in violation of another's Fourth Amendment rights. *See State v. McKnight*, 291 S.C. 110, 352 S.E.2d 471 (1987) (defendant who seeks to suppress evidence on Fourth Amendment grounds must demonstrate he has a legitimate expectation of privacy in connection with the searched premises in order to have standing to challenge the search). Unlike Fourth Amendment cases, the court explained that the concern under the current set of facts is not whether one's

personal constitutional rights were violated in obtaining the evidence, but whether the evidence obtained is unreliable.

In this case, we find respondent has a substantial personal stake in the admissibility of the identification evidence because the identification undercut his ability to present his defense that he and Tavo Glenn were with each other the entire day of the crime and that he did not know anything about the Alltel robbery. *See State v. Clausell,* 121 N.J. 298, 580 A.2d 221 (1990) (because defendant had a substantial personal stake in the admissibility of the identification evidence, he had standing to challenge identifications of his co-defendant). The identification of Glenn was an essential element in proving respondent's participation in the crime. Admitting the evidence of Glenn's identification in respondent's trial effectively destroyed his defense. *See People v. Bisogni,* 4 Cal.3d 582, 94 Cal.Rptr. 164, 483 P.2d 780 (1971) (identification evidence based on an unfairly conducted show-up is equally unreliable when it is directed toward the identity of a co-participant in a crime as when it relates to the identity of the defendant on trial; whenever the identity of a confederate is essential to prove the defendant's participation in a crime and when such evidence effectively destroys the defense offered by the defendant, he has standing to challenge the fairness of the identification procedures of the alleged co-participant). Therefore, respondent has standing to challenge the fairness of the show-up identification of Glenn.

## *Harmless Error*

In determining whether an error is harmless, the reviewing court must review the entire record to determine what effect the error had on the verdict. *State v. Mizzell,* 349 S.C. 326, 563 S.E.2d 315 (2002). Error is harmless when it could not reasonably have affected the result of the trial. *State v. Reeves,* 301 S.C. 191, 391 S.E.2d 241 (1990).

Without the identification of Tavo Glenn, the case against respondent is circumstantial with no direct link between respondent and the Alltel robbery. Respondent was not identified as being part of the robbery of the Alltel store; in fact, there was only one perpetrator inside the store. There is, however, circumstantial evidence of respondent's guilt. The circumstantial evidence is as follows: (1) respondent was

driving a car, with Glenn as his passenger, shortly after the robbery; (2) they were first noticed by police when respondent "cut off" an officer not far from the store; (3) respondent failed to stop for blue lights; (4) a bystander saw a gun being tossed from the passenger side window during the chase—the gun was later determined to be similar to the gun used in the crime; (5) after apprehending Glenn, police found the following items in Glenn's possession: a pair of latex gloves, .380 caliber pistol ammunition, and a little over $400, which was the amount taken from the Alltel store; and (6) after being captured, respondent made the following unsolicited comments: that he did not know anything about a robbery, that he "wasn't even near" an Alltel store, that his man had a gun, and that he would be willing to tell what he knew to a detective. The circumstantial evidence against respondent is strong.

However, respondent's defense included explanations of why he fled from police—that he was on parole and did not want to be caught with drugs and a gun in the car. He also explained his comments to police by stating he heard about the robbery from the police radio and from the officers standing outside the car. When Glenn threw the gun out of the car, respondent stated he thought Glenn was getting rid of the drugs. Respondent further testified that he and Glenn were never apart the entire day except for stopping for respondent to go to the bathroom and to switch drivers.

Therefore, the admission of the identification of Glenn at respondent's trial effectively destroyed his defense. The trial court's failure to allow respondent to challenge Glenn's show-up identification was not harmless error. If Glenn's show-up identification was in fact not proper, the admission of that unreliable evidence could have reasonably affected the result of respondent's trial. The Court of Appeals correctly held that the interests of justice required an *in camera* hearing be conducted on the pre-trial identification of Glenn.

The Court of Appeals found that respondent was not, however, entitled to a new trial. The Court of Appeals remanded the case to the trial court for the purpose of conducting an *in camera* hearing to determine whether the identification of Glenn was so tainted as to require its suppression at trial. The court stated that should such a finding be made, respon-

dent would then be entitled to a new trial. The Court of Appeals properly remanded for an *in camera* hearing. *See State v. Simmons*, 308 S.C. 80, 417 S.E.2d 92 (1992) (*per se* rule requiring court to hold *in camera* hearing when the State offers a witness whose testimony identifies the defendant as the person who committed the crime and the defendant challenges the in-court identification as being tainted by a previous illegal identification). We note that the fact Glenn's identification has been upheld on appeal is irrelevant to the question of whether respondent is entitled to have an *in camera* hearing to determine whether Glenn's show-up identification was properly conducted. When respondent was denied the hearing, he was denied the opportunity to participate and elicit evidence that may not have been elicited in the pretrial hearing at Glenn's trial.

## CONCLUSION

We find respondent has standing to challenge the identification of his alleged co-participant in the crime. We find the trial court's error in not holding a hearing regarding Glenn's identification was not harmless error. Therefore, the Court of Appeals' decision to remand to the trial court for the purpose of conducting an *in camera* hearing to determine whether Glenn's identification should be suppressed is

**AFFIRMED.**

TOAL, C.J., BURNETT, PLEICONES, JJ., and Acting Justice PAULA H. THOMAS, concur.